299 So.2d 603 (1974)
David MASON and Meadows Builders, Inc., Appellants,
v.
Edward S. AVDOYAN, Trustee in Bankruptcy of Florida Pipe and Manufacturing Company, Inc., Appellee.
No. 73-377.
District Court of Appeal of Florida, Fourth District.
August 23, 1974.
Rehearing Denied September 27, 1974.
*604 Eli H. Subin and Seymour S. Ross of Subin, Shams & Rosenbluth, Orlando, for appellants.
Brian C. Sanders of Sanders, McEwan, Mims & McDonald, Orlando, for appellee.
JOHNSON, CLARENCE T., JR., Associate Judge.
Appellee, trustee in bankruptcy of Florida Pipe and Manufacturing Company, Inc., (hereafter called Florida Pipe), brought this action against Appellant, David Mason (hereafter called Mason), a stockholder, officer and director of the bankrupt, to enforce creditors' rights under Sec. 608.55, Fla. Stat., which prohibits certain transfers to officers, directors or stockholders made after or in contemplation of insolvency. After a five-day trial resulted in a hung jury, the trial court alternatively directed a verdict and granted a summary judgment in favor of the trustee as to Mason, leaving pending only a portion of the case wherein the trustee seeks to pierce the corporate veil of Meadows Builders, Inc. to reach its alleged alter ego. Mason brings this interlocutory appeal from the alternative directed verdict/summary judgment.
The controversy, though complex in its entirety, stems from a security agreement executed by Florida Pipe to Mason on March 22, 1968, which gave to Mason a security interest in its inventory, equipment and accounts receivable, each being covered in separate paragraphs of the agreement. Although not entirely clear as to the extent of its coverage, the only direct reference to future advances was in the paragraph primarily concerned with equipment, which indicated that the lien created was "security for the payment of all loans and advances now or in the future to be made" (emphasis supplied).
The trustee (appellee) contends that the agreement, as it concerns future advances, is defective in two respects:
1. That it failed to state the maximum unpaid balance of future advances that could be outstanding at any one time. (The trial court's agreement with this contention formed the basis of the order appealed from.)
2. That the agreement, by its terms did not impress a lien for future advances on collateral other than equipment. (The trial court ruled that the agreement was ambiguous in this respect.)
The resolution of Point 1 requires a determination of the applicability to personal property of Sec. 697.04, Fla. Stat., between January 1, 1967 when the Florida Uniform Commercial Code became effective, and July 1, 1970 when Sec. 697.04 was amended to eliminate its reference to personalty. Two sections of the Florida Uniform Commercial Code (hereafter called Code) are directly involved:
(1) Sec. 679.204, Fla. Stat., provides, in part:
"When security interest attaches; after-acquired property; future advances

*605 * * * * * *
(5) Obligations covered by a security agreement may include future advances or other value whether or not the advances or value are given pursuant to commitment."
(2) Sec. 680.104(3), Fla. Stat., provides:
"The following laws or parts of laws, although not repealed, shall yield to and be superseded by any provisions of the code which may be inconsistent or in conflict therewith:
Chapter 697  Instruments deemed mortgages and the nature of a mortgage."
Sec. 697.04, as it existed at the time the security agreement in question was executed, covered both real and personal property, and provided:
"697.04 Future advances may be secured
(1) Hereafter, any mortgage or other instrument given for the purpose of creating a lien on real or personal property ... may, and when so expressed therein shall, secure not only existing indebtedness, but also such future advances, whether such advances are obligatory or to be made at the option of the lender ... but the total unpaid balance so secured at any one time shall not exceed a maximum principal amount which must be specified in such mortgage or other instrument... ."
In summary, Sec. 679.204(5) of the Code is broad and permits security agreements to include future advances with or without commitment to make the advances. Sec. 697.04 likewise permits this, but goes on to affirmatively require that the instrument state the maximum principal amount of unpaid future advances that may be secured at any one time. The security agreement in question admittedly did not comply with this provision. The question then devolves whether this provision of Sec. 697.04 was superseded by the Code, because it was either inconsistent with or in conflict with the Code.
Professor Daniel E. Murray, in 26 U. of Miami L.Rev. 72, at page 88, concluded there was a conflict:
"Original section 697.04(1) of the Florida Statutes provided that any mortgage or other instrument creating a lien on real or personal property which provided for future advances was required to provide for the maximum amount of the future advances and for a period not to exceed 20 years. This section was in conflict with a UCC provision, section 679.9-204(5) of the Florida Statutes. As a result, section 697.04 has been amended to delete any reference to personal property."
In the case of In Re Sanelco, 7 U.C.C. Reporting Service 65 (M.D.Fla. 1969), the Referee in Bankruptcy found neither a conflict nor an inconsistency between the statutes.
Following In Re Sanelco, the Florida Legislature, in Extraordinary Session, passed Chapter 70-34, Laws of Florida, 1969, which amended Sec. 697.04 to delete any reference to personal property, thereby leaving it applicable only to realty.
Counsel have cited no other cases where this point has been directly decided.
We are aware of the basic rules of statutory construction that Courts should endeavor to harmonize and reconcile statutory provisions, Ideal Farms Drainage District v. Certain Lands, 154 Fla. 554, 19 So.2d 234 (1944), and that in the absence of positive inconsistency or repugnancy in the practical effect and consequences of two statutes, each should ordinarily be given effect. State v. Gadsden County, 63 Fla. 620, 58 So. 232 (1912). But, these rules yield to a clearly discernible contrary legislative intent.
In adopting the Uniform Commercial Code, the Florida Legislature stated in Sec. 671.104, Fla. Stat., that the Code was *606 intended as unified coverage of its subject matter and in Sec. 671.102(2), Fla. Stat., that among the underlying purposes and policies of the Code were:
"a. To simplify, clarify and modernize the law governing commercial transactions;
* * * * * *
c. To make uniform the law among the various jurisdictions."
In construing Uniform Laws, it is pertinent to review holdings in other jurisdictions where the particular act is in force, in the interest of attempting to achieve a uniform interpretation. Valentine v. Hayes, 102 Fla. 157, 135 So. 538 (1931). Aside from In Re Sanelco, supra, the case closest in point we have found is Lincoln Bank and Trust Company v. Queenan, 344 S.W.2d 383 (Ky. 1961). The Court there held that statutes that required a chattel mortgage state the date and maturity of the secured obligation and be acknowledged and recorded in order to be valid against innocent third parties, must yield to the provisions of the Uniform Commercial Code not setting forth such a requirement. In so ruling, the Kentucky Court stated:
"The Code represents an entirely new approach in several areas of commercial law, and especially as to security transactions. Its adoption in this state signifies a legislative policy to join with other states in achieving uniformity. Code § 1-102(2)(c). The realization of this purpose demands that so far as possible the meaning of the law be gathered from the instrument itself, unfettered by anachronisms iindigenous to the respective jurisdictions in which it is in force. Cf. 50 Am.Jur. 480 (Statutes, § 465). Accepting that principle, we adopt as a rule of construction that the Code is plenary and exclusive except where the legislature has clearly indicated otherwise."
The Uniform Commercial Code was a substantial revision of the law governing commercial transactions in Florida. In addressing itself to a subject so broad, it was perhaps, inevitable that provisions in other statutes would surface from time to time that were either obsolete or whose judicially construed viability or operational effect was inconsistent with the legislative intent of the Code. The decision in In Re Sanelco, supra, was just such an interpretation. To this decision, the legislature immediately responded by enacting Chapter 70-34, Laws of Florida, which amended Sec. 697.04 to delete any reference to personalty, stating in the preamble:

"Whereas, section 697.04, Florida Statutes provides that any mortgage or other instrument given for the purpose of creating a lien on real or personal property may secure future advances as well as the existing indebtedness, and that "the total unpaid balance so secured at any one time shall not exceed a maximum principal amount which must be specified in such mortgage or other instrument, . ..," and

Whereas, the Florida Uniform Commercial Code, in section 679.9-204(5), Florida Statutes, also authorizes and contemplates security agreements covering future advances, but contains no requirement, express or implied, that a security agreement covering future advances must specify a dollar ceiling, and

Whereas, the Florida Uniform Commercial Code further provides, in section 680.10-104(3), Florida Statutes, that chapter 697, Florida Statutes, entitled "Instruments deemed mortgages and the nature of a mortgage," which includes section 697.04, is "not repealed (but) shall yield to and be superseded by any provisions of the code which may be inconsistent or in conflict therewith," and

Whereas, primary objectives of the Florida Uniform Commercial Code include the achievement of a unified coverage *607 of the subject matter and making uniform the law among the various jurisdictions, without unnecessary local peculiarities in the requirements for security agreements, and

Whereas, it is the intent of this legislature that security agreements covering future advances under the Uniform Commercial Code shall not be required to meet the requirements of section 697.04, Florida Statutes, ... ."
We believe it abundantly clear that part of the legislative intent in adopting the Uniform Commercial Code in Florida was to require that future advance provisions of security agreements covering personalty meet only the requirements of the Code. To permit the challenged requirements of Sec. 697.04 to survive the adoption of the Code would not assist in "making uniform the law among the various jurisdictions", but would create diversity and multiformity. It would not "simplify ... the law governing commercial transactions", but would burden and complicate it. It would do violence to the expressed objective of "achieving uniform coverage of the subject matter" by fragmentizing the law on an identical point. We hold that the future advance requirements of Sec. 697.04, Fla. Stat., as they relate to personal property, are inconsistent with the legislative intent embodied in the provisions of the Florida Uniform Commercial Code, and were superseded by Code Sec. 679.204, Fla. Stat. The security agreement in question was, therefore, not required to comply with the provisions of Sec. 697.04, supra, and the trial court erred in so ruling.
Appellant secondly argues that the agreement, even if not rendered invalid by Sec. 697.04, did not impress a lien for future advances on collateral other than equipment. The trial court found the agreement ambiguous in respect to the future advance interest in the paragraphs delineating the non-equipment type collateral. Interestingly, both appellant and appellee contend that the agreement is not ambiguous. However, their views of what the agreement was intended to do are diametrically opposed. This is the paradox we discussed in the case of Royal American Realty v. Bank of Palm Beach & Trust Co., Fla.App. 1968, 215 So.2d 336, that is, language which both parties assert to be unambiguous can very well be ambiguous in fact merely because of the different reasonable constructions which can be placed upon the language. In that event, parol evidence is properly admissible, not for the purpose of changing or varying the terms of the written instrument, but to elucidate, explain or clarify the intention of the parties. Such evidence was admitted and all parties to the agreement (being the persons whose intent is the issue) agreed, as did the corroborating testimony of the attorneys who prepared the document, that the intent of the parties was that the security agreement did pledge all of the various types of collateral named in the agreement as security for future advances. This evidence being neither contradicted nor impeached, the court should have directed a verdict for the appellant Mason.
Reversed and remanded for further proceedings consistent herewith.
OWEN, C.J., and DOWNEY, J., concur.