368 So.2d 934 (1979)
CITY NATIONAL BANK OF MIAMI, N.A., Appellant,
v.
Deborah F. WERNICK, Appellee.
No. 77-2517.
District Court of Appeal of Florida, Third District.
March 13, 1979.
Rehearing Denied April 12, 1979.
*935 Bretan & Marks and Howard R. Hirsch, Miami, for appellant.
Fried, Weil & Scheer and Richard A. Daar, Miami Beach, for appellee.
Before KEHOE and SCHWARTZ, JJ. and CHARLES CARROLL (Ret.), Associate Judge.
SCHWARTZ, Judge.
This case presents the question of whether a person whose name appears as the payee on a check, which is never delivered to her but which is thereafter deposited and credited to the identical account of the maker upon which the check had been drawn, may recover the face amount of the check from the collecting-and-drawee bank. The trial judge, by entering summary judgment below for the plaintiff "payee," answered yes. We say no and order judgment entered for the bank.
The scenario involved here opens in February, 1973, when the plaintiff, Deborah Wernick, made an investment of $13,500.00 with the Guardian Mortgage & Investment Corporation. Under their arrangement, Guardian was to "service" a mortgage with the Jupiter Financial Corporation in which Ms. Wernick had purchased an interest, by forwarding payments to her of 1% percent of her investment per month. In fact, Guardian faithfully sent $135.00 monthly checks to Ms. Wernick until March, 1976, when the payments abruptly ceased, and Guardian became effectively defunct.
After that occurred, and only then, Ms. Wernick, through her counsel, discovered the facts which gave rise to this action. It seems that on May 14, 1973, Guardian, through its president, Archie Struhl, wrote a check payable to Ms. Wernick for $13,500.00 on its trust account with the present appellant-defendant below, City National Bank of Miami.[1] Three months later, after someone who is unknown but who was definitely not Ms. Wernick had indorsed her name on the check, and it had been also indorsed by Guardian through the use of a "for deposit only" stamp, it was deposited at City National into the self-same Guardian trust account from which it had been drawn. Three things are undisputed: (1) Ms. Wernick did not sign the check; (2) Ms. Wernick never had possession of the check nor the faintest intimation either of its existence or her connection with it until years later; and (3) the entire transaction represented no more than a complete "wash" reflected only by bookkeeping entries of a simultaneous credit and debit, each of $13,500, to the Guardian Mortgage trust account at the bank.[2]
Nonetheless, in 1977, Ms. Wernick sued the bank to recover $13,500 plus interest for conversion of the check. She based this claim below (and bases it here) on the theory that, as the named payee, she had the right to possession of the check and thus the ability to maintain an action for its conversion,[3] and that the bank indeed converted the instrument when the check was "paid on a forged indorsement," under Section 673.3-419(1)(c), Florida Statutes (1975). In response, the bank basically contended (and contends) that Ms. Wernick never acquired an enforceable interest in the check. *936 Both parties moved for summary judgment.[4] The trial court denied the defendant's motion and granted the plaintiff's. We have concluded that, under the particular and (to say the least) peculiar facts of this case, no effective delivery of the check ever took place. Since such a delivery is a prerequisite to the existence of Ms. Wernick's rights to possession and ownership of the check, and therefore to her right to recover for its conversion,[5] we reverse the judgment below.
The rule that the "delivery" of an instrument is indispensible to its effectiveness is one of the most ancient and basic in commercial law. 10 C.J.S. Bills and Notes § 202 (1938). As the Florida law was expressed by the fifth circuit in City of New Port Richey v. Fidelity & Deposit Co. of Maryland, 105 F.2d 348, 350 (5th Cir.1939):
"As between the immediate parties and all others not holders in due course,[[6]] delivery is essential to the existence of the instrument as a legal obligation. Until put in operation by delivery, the original instrument and indorsements of it are, as to such parties, incomplete and revocable, and a delivery may be shown to have been conditional or for a special purpose."[7]
Accord: e.g. Johnson v. Smith, 84 So.2d 722 (Fla. 1956); Curry v. Wright, 101 Fla. 1489, 134 So. 508 (1931), reh. denied, 101 Fla. 1489, 136 So. 643 (1931). As to the specific application of the delivery requirement to the issue involved in this case  the right of Ms. Wernick to maintain an action for conversion of the check  it is said in 11 Am.Jur.2d, Bills and Notes, § 270, p. 298 (1963), that
"As a general rule, a negotiable instrument, like any other written instrument, has no legal inception or valid existence as such until it has been delivered in accordance with the purpose and intention of the parties. Until that is done, it is a nullity and not the subject of ownership. The payee acquires no rights in the instrument prior to delivery." [emphasis supplied]
In this case, it is clear that no delivery ever took place. The check itself remained in the physical possession of Guardian *937 an until it was deposited, obviously by Guardian itself, in its own trust account at the bank. It is true, as the appellee argues, that a manual delivery of the instrument is not required when a valid, so-called "constructive" delivery has occurred. This rule applies, however, only when
"... the maker in some way evinced an intention to make it an enforceable obligation against himself, according to its terms, by surrendering control over it and intentionally placing it under the power of the payee or of some third person for his use."
11 Am.Jur.2d, Bills and Notes, § 276, p. 302 (1963). There is simply no evidence of such an intention evinced by any acts or conduct of Guardian in its handling of the check. Compare First National Bank in Fort Lauderdale v. Hunt, 244 So.2d 481 (Fla. 4th DCA 1971).[8]
Nor did the physical transfer of the check to the bank amount to a valid delivery. A parting with actual possession must be accompanied by an intention to pass title or to give effect to the instrument. Leverett v. Awnings, Inc., 97 Ga. App. 811, 104 S.E.2d 686 (1958); W.H. Barber Co. v. Hughes, 223 Ind. 570, 63 N.E.2d 417 (1945). In this case, the act of depositing the check to the maker's own account demonstrates quite the opposite intention. The bank, in handling the check and making the bookkeeping entries in Guardian's account which reflected the "wash" involved was therefore acting as an agent, not for Ms. Wernick, but for Guardian itself. And it is well-settled that a transfer to the maker's own agent is not a lawful delivery. Aughtry v. Keary, 112 Fla. 609, 150 So. 804 (1933); Caviness v. Andes & Roberts Brothers Construction Co., 508 S.W.2d 253 (Mo. App. 1974).
Under the applicable law, Ms. Wernick did not acquire rights to the check merely because of the fortuity that her name was written upon it after the words "pay to the order of ..."[9] The judgment below is reversed and the cause remanded with directions to enter judgment for the defendant.
Reversed and remanded.
NOTES
[1] The face of the check bore the legend "Paid off in full mortgage with Jupiter Fin. Corp."
[2] So far as the record shows neither Ms. Wernick's investment, which ostensibly continued to bear interest for two and a half years thereafter, nor the existence of the Jupiter loan itself had been affected in any way.
[3] The plaintiff cites, among other cases, Lewis State Bank v. Raker, 138 Fla. 227, 189 So. 227 (1939) and Jett v. Lewis State Bank, 277 So.2d 37 (Fla. 1st DCA 1973).
[4] By the time this case was filed Guardian, a Ponzi-type enterprise, was in receivership and its principals, including Struhl, who drew the check, were facing multiple charges of grand larceny. They each took the fifth amendment and refused to be deposed in this litigation. There was thus no evidence in the record as to Guardian's motivations for engaging itself in the almost surreal transaction reflected in the record. Nor does the record show, see n. 2, supra, whether the plaintiff's mortgage investment had in fact been paid to Guardian, as the face of the check indicated. We do not know therefore whether Guardian ever intended to repay her investment through the means of the check. If it did not, and if Guardian's motives had to do only with demonstrating on paper a larger volume of investment and reinvestment by presumably satisfied customers, § 673.3-405(1)(b), Fla. Stat. (1975) would bar her recovery. Under that code provision

"(1) An indorsement by any person in the name of a named payee is effective if:
* * * * * *
"(b) A person signing as or on behalf of a maker or drawer intends the payee to have no interest in the instrument; ..."
See McConnico v. Third National Bank in Nashville, 499 S.W.2d 874, 885 (Tenn. 1973); Phoenix Die Casting Co. v. Manufacturers and Traders Trust Co., 50 Misc.2d 152, 269 N.Y.S.2d 890 (1966); Aritor Corp. v. Chase Manhattan Bank, 44 Misc.2d 672, 254 N.Y.S.2d 899 (1964); cf., Florida National Bank at St. Petersburg v. Geer, 96 So.2d 409 (Fla. 1957); Johnston v. Exchange National Bank of Tampa, 152 Fla. 228, 9 So.2d 810 (1942).
[5] Seiff v. Presto Brick Machine Corp., 168 So.2d 700 (Fla. 3rd DCA 1964), cert. denied, 174 So.2d 31 (Fla. 1965); Allen v. Universal C.I.T. Credit Corp., 133 So.2d 442 (Fla. 1st DCA 1961); Independence Discount Corp. v. Bressner, 47 A.D.2d 756, 365 N.Y.S.2d 44 (1975).
[6] Non-delivery is no defense to a holder in due course. See § 673.3-306(3), Fla. Stat. (1975).
[7] While this case, as well as most of the other authorities cited in this opinion, were decided under the pre-U.C.C. Negotiable Instruments Law, it seems clear that the Code does not affect either the necessity of establishing a "delivery," see Caviness v. Andes & Roberts Brothers Construction Co., 508 S.W.2d 253 (Mo. App. 1974); 11 Am.Jur.2d, Bills and Notes, § 270 (1963); 6 Fla.Jur.2d, Bills and Notes, § 143 (1978), or the standards which determine whether a lawful delivery has actually taken place. Billingsley v. Kelly, 261 Md. 116, 274 A.2d 113 (1971), and cases cited.
[8] Ms. Wernick's brief contends that Guardian was acting as her fiduciary and thus that a constructive delivery of the check occurred, in effect, as soon as it was written. We cannot agree. While Guardian was plainly acting as the plaintiff's agent in the collection of the proceeds of the mortgage, there is no evidence that it acted in that capacity by "receiving," on her behalf, the check which it itself drew to her order.
[9] See Stone & Webster Engineering Corp. v. First National Bank & Trust Co. of Greenfield, 345 Mass. 1, 184 N.E.2d 358, 362 (1962). ("Had the checks been delivered to the payee ..., the defendant might have been liable for conversion to the payee.").