567 So.2d 923 (1990)
Jan and Myrtle BLOEMPOORT, Appellants,
v.
REGENCY BANK OF FLORIDA, Appellee.
No. 89-02465.
District Court of Appeal of Florida, Second District.
September 5, 1990.
Rehearing Denied October 10, 1990.
Hala Mary Ayoub of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, for appellants.
Theodore L. Tripp, Jr. of Garvin & Tripp, P.A., Fort Myers, for appellee.
FRANK, Acting Chief Judge.
The Bloempoorts have sought review of the final summary judgment entered in favor of the Regency Bank in an action they commenced for conversion, negligence and money had and received.
Jan and Myrtle Bloempoort sold their home on Sanibel Island to Peter and Wendy Burns. Of the several mortgages encumbering the property, the Bloempoorts retained a first mortgage in the amount of $39,000. Sometime later, Burns refinanced several mortgages, including the Bloempoorts', through Dime Savings Bank of New York. The refinancing with Dime Savings took place without the Bloempoorts' knowledge. A check drawn by First United Land Company (First United), the closing agent, on its account with the Regency Bank was issued to the Bloempoorts in the amount of $37,240.63. Burns left the closing in possession of the check. He then forged the signatures of the Bloempoorts on the check and cashed it at First Independence Bank of Florida (First Independence). The check, endorsed by First Independence, was forwarded to Sun Bank of Miami. Sun Bank also endorsed the check and forwarded it to the Regency Bank for payment.
Burns defaulted on his mortgage to the Bloempoorts. The Bloempoorts instituted a foreclosure action against Burns and Dime Savings as the subsequent mortgagee. Although Dime Savings believed itself to be the first mortgagee, it was not because of the existing first mortgage held by the Bloempoorts. Title Insurance Company of Minnesota (Minnesota Title) had *924 issued a title policy to Dime. Thus, to put Dime in a first position it settled with the Bloempoorts' paying them the balance due on Burns' mortgage. In exchange, the Bloempoorts assigned their claim against the Regency Bank to Minnesota Title and released their first mortgage. Minnesota Title instituted this action in the Bloempoorts' name.[1] The Bloempoorts unsuccessfully sought a summary judgment against the Regency Bank. The third party defendants, First Independence and Sun Bank, filed motions for summary judgment against the Regency Bank which were also denied. The Regency Bank's motion for summary judgment against First Independence, the Sun Bank and the Bloempoorts was granted. The Bloempoorts appealed. We are convinced that the trial court erred in granting the Regency Bank's motion thus defeating the Bloempoorts' statutory conversion claim. § 673.419(1)(c), Fla. Stat. (1989).
It is apparent from the transcript of the hearing held on the motions for summary judgment that the parties vigorously contested the law applicable to an action of this kind. It is equally evident that at the hearing the trial court, understandably, was uncertain as to the law in this seemingly complex area. It is unfortunate, however, that the final summary judgment granted the Regency Bank does not explicate the principles relied upon by the trial court. We have, however, attempted to synthesize from the raw material provided by case law and chapters 673 and 674, Florida Statutes (1989), the reasons for the trial court's determination to grant the Regency Bank's motion for summary judgment. Our effort in this regard fails to reveal a legally sound basis for granting that motion.
Our resolution of two interdependent elements commands reversal. The conversion claim asserted against the Regency Bank requires an initial determination of whether the check ultimately forged with the Bloempoorts' endorsements was delivered to them. Bloempoorts' ownership of the check, an essential factor, hinges on its delivery to Burns because "[t]he payee acquires no right in the instrument prior to delivery." City National Bank of Miami, N.A. v. Wernick, 368 So.2d 934, 936 (Fla. 3d DCA), cert. denied, 378 So.2d 350 (Fla. 1979). There is no dispute the check was not directly delivered to the Bloempoorts. Rather, it was handed to Burns for reasons not appearing in the record. A constructive delivery occurs, however, when "`the maker in some way evinced an intention to make it an enforceable obligation against himself, according to its terms, by surrendering control over it and intentionally placing it under the power of the payee or some third person for his use.'" Wernick, 368 So.2d at 937, citing, 11 Am.Jur.2d, Bills and Notes, § 276 p. 302 (1963). In the absence of evidence revealing a contrary purpose, and treating the record in a light most favorable to the Bloempoorts, we conclude that First United's actions in creating a check in an amount equal to that due the Bloempoorts from Burns and surrendering it to Burns permits the conclusion that First United intended the check to be an "enforceable obligation."
Turning to the remaining question, we concur in the Bloempoorts' contention that as payees of a negotiable instrument bearing a forged endorsement they are entitled to sue the drawee, the Regency Bank, under section 673.419(1)(c), Florida Statutes (1989), which states that "[a]n instrument is converted when: ... it is paid on a forged indorsement."[2] It appears to us that the Bloempoorts' ability to sue the Regency Bank literally fits the statutory language. A statement extracted from Messeroff v. Kantor, 261 So.2d 553 (Fla. 3d DCA 1972), seems suited to this view of the statute: "It is well settled both under pre-code *925 and post-code law that an unauthorized endorsement does not operate to bar an action by a payee against the drawee bank who (sic) ultimately pays the draft." Id. at 555.
Although the quoted portion of Messeroff is without supporting authority, our independent inquiry has revealed that Florida has for many years, preceding and following the adoption of the Uniform Commercial Code, held to the principle expressed in Messeroff.[3] For example, in Lewis State Bank v. Raker, 138 Fla. 227, 189 So. 227, 229 (1939), our supreme court borrowed from a Minnesota decision, McFadden v. Follrath, 114 Minn. 85, 130 N.W. 542 (1911), the statement that:
A bank, paying a check upon the unauthorized indorsement of the payee and charging the amount thereof to the drawer's account, becomes liable to the payee for the amount of such check, unless the conduct of the payee excuses such payment, or prevents him from asserting such liability.
See also O.K. Moving & Storage Co. v. Eglin National Bank, 363 So.2d 160 (Fla. 1st DCA 1978); Wilton Manors National Bank v. Adobe Brick & Supply Co., 232 So.2d 29 (Fla. 4th DCA 1970); R.J. Edgerly v. Schuyler, 113 So.2d 737 (Fla. 3d DCA 1959), affirmed, 121 So.2d 417 (Fla. 1960).
We recognize that in virtually all, if not all, of the extant cases dealing with a payee's action against a drawee bank, the payee and the bank have stood in a proximate commercial relationship. In urging affirmance of the trial court's action, the Regency Bank, for some unilluminated reason, attaches significance to that particular difference between the matter at hand and the reported decisions. It has not, however, told us why the distinction should affect the result we have reached. We are not, in light of the Uniform Commercial Code's comprehensive provisions and our research, persuaded by the Regency Bank's naked contention.
A further consideration adding to the correctness of the Bloempoorts' action against the Regency Bank lies in the limitation found in section 673.419(3):
Subject to the provisions of this code concerning restrictive indorsements a representative, including a depositary or collecting bank, who has in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion or otherwise to the true owner beyond the amount of any proceeds remaining in his hands.
See Landmark Bank of Brevard v. Hegeman-Harris Company, Inc., 522 So.2d 1051 (Fla. 5th DCA 1988). Even if First Independence and the Sun Bank possessed the defenses prescribed in subsection (3), for the Bloempoorts to pursue either of those banks would be futile in light of the fact that Burns received the full value of the check and there were no funds retained in either of those banks. Cf. Jackson v. Vitrified China v. People's American National Bank of Miami, 388 So.2d 1059 (Fla. 3d DCA 1980).
Finally, we respond briefly to the Regency Bank's claim that if it is required to pay the Bloempoorts the face amount of the check, it will be paying twice. That view carries no weight in our determination and, contrary to the suggestion appearing in the transcript of the hearing referred to above, that concern should not have contributed, if it did, to the trial court's award of a summary judgment to the Regency Bank. The Uniform Commercial Code accommodates such potential exposure. See, e.g., § 673.406, Fla. Stat. (1989) (negligence contributing to alteration or unauthorized signature), and § 674.207, Fla. Stat. (1989) (warranties on transfer or presentment of items).
The fact that the parties each sought a determination on the merits *926 through cross motions for summary judgment does not in itself preclude the existence of genuine issues of material fact. "The fact that both parties make motions for summary judgment, and each contends in support of his respective motion that no genuine issue of fact exists, does not require the court to rule that no fact issue exists." Begnaud v. White, 170 F.2d 323, 327 (6th Cir.1948); see also State of Florida Department of Environmental Regulation v. C.P. Developers, Inc., 512 So.2d 258 (Fla. 1st DCA 1987); Aloff v. Neff-Harmon, Inc., 463 So.2d 291 (Fla. 1st DCA 1984). In our judgment, in contrast to claims that may be asserted by other participants in the negotiation of the check, there is no residual genuine issue of material fact requiring a trial as between the Regency Bank and the Bloempoorts.
Based upon the foregoing, we vacate the final summary judgment granted the Regency Bank and remand this matter for the entry of a final summary judgment in favor of the Bloempoorts.
HALL and PARKER, JJ., concur.
NOTES
[1] The Bloempoorts are merely the nominal claimants in this proceeding. Minnesota Title is the party "for whose benefit the action [was] brought." Florida Rule of Civil Procedure 1.210.
[2] The Bloempoorts are entitled, for and on behalf of Minnesota Title, to recover the face amount of the converted check. § 673.419(2), Fla. Stat. (1989).
[3] We reject the notion that enactment of the Uniform Commercial Code devitalized pre-code doctrines governing negotiable instruments. Section 671.103, Florida Statutes (1988), makes plain that "[u]nless displaced by the particular provisions of this code, the principles of law and equity ... shall supplement its [the Code's] provision."