**ATTORNEY'S TITLE INSURANCE FUND, INC., a Florida Corporation, Plaintiff,**

v.

**REGIONS BANK, Defendant.**

**No. 06–61814–CIV–UNGARO.**

United States District Court,
S.D. Florida.

April 11, 2007.

Carlos David Lerman, Smoler Lerman Bente & Whitebook, Hollywood, FL, for Plaintiff.

David Stuart Garbett, Garbett Bronstein Stiphany & Allen, Elizabeth B. Dombovary, Lewis R. Cohen, Miami, FL, for Defendant.

### ORDER ON DEFENDANT'S MOTION TO DISMISS

UNGARO, District Judge.

THIS CAUSE is before the Court upon Defendant's Motion to Dismiss Complaint, filed December 11, 2006. (D.E.2.) Plaintiff filed its Response on January 5, 2007, (D.E.7) to which Defendant replied on January 7, 2007. (D.E.8.) The matter is ripe for disposition.

THE COURT has considered the motion and the pertinent portions of the record

and is otherwise fully advised in the premises.

### BACKGROUND AND FACTS

On November 2, 2006, Plaintiff, Attorney's Title Insurance Fund, Inc., ("Attorney's Title Fund") filed this action against Defendant, Regions Bank, in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County Florida. (Notice of Removal ¶ 1.) On December 5, 2006, Defendant removed the action to this Court pursuant to 28 U.S.C. § 1332(a), § 1441(a), and § 1446(a). (Notice of Removal at 1.)

The Court recites the following facts taken from Plaintiff's complaint and accepted as true for the purpose of deciding Defendant's motion to dismiss. This action arises out of a fraudulent transaction that occurred on June 28, 2004, involving the sale of certain real property owned by Rae O. Chuven and Hyman Chuven. (Compl.¶ 4.) The Chuvens' property was sold by imposters purporting to be the true owners of the property to a buyer (Benoit Jacobs), who used the property as collateral to finance the purchase and procured a loan from Home Equity Mortgage Company. (Compl. ¶ 4.)

Pursuant to the closing statement, the closing agent (Maria Veronica Rivas) issued a check in the amount of $180,926.11, made payable to Rae O. Chuven and Hyman Chuven, which was drawn on Regions Bank, N.A. ("the Check"). (Compl. ¶ 4 & Ex. C.) According to Plaintiff, the maker of the Check (Rivas) intended that the Check would be an enforceable obligation against her according to its terms, and she surrendered control of the Check with that intention. (Compl.¶ 5.) The imposter sellers forged the endorsements of Rae O. Chuven and Hyman Chuven on the Check, and Defendant paid the Check on the unauthorized (forged) endorsement. (Compl.¶¶ 6, 9.)

Rae O. Chuven and Hyman Chuven subsequently filed an action to cancel the deed conveying the Chuvens' property to Jacobs and the mortgage loan given by Home Equity Mortgage Company. (Compl.¶ 6.) On March 23, 2005, the Circuit Court entered a final summary judgment in favor of the Chuvens, quieting title to the property. (Compl.¶ 7.) Plaintiff Attorney's Title Fund subsequently paid Home Equity Mortgage Company's unpaid balance on the mortgage loan and acquired the Chuvens' claims arising out of the transaction. (Compl. ¶ 8 & Ex. D.)

According to Plaintiff, Defendant Regions Bank is liable to the payee (the Chuvens) for the amount of the Check because Defendant paid the Check over the Chuvens' unauthorized (forged) endorsement. (Compl.¶ 9.) As the assignee of the Chuvens' claims, Plaintiff seeks to recover from Regions Bank damages in the amount of the Check, which equals $180,926.11, plus any accrued interest[1]. (Compl.¶ 9.)

### LEGAL STANDARD

On a motion to dismiss, "a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Milburn v. United States*, 734 F.2d 762, 765 (11th Cir.1984). Under the Federal

---

1. The Court notes that Plaintiff fails to identify in its single-count complaint a specific legal theory upon which it seeks recovery. In briefing the motion to dismiss, the parties treat the complaint as a claim for conversion of a negotiable instrument pursuant Florida Statutes section 673.4201.

Rules of Civil Procedure, a claimant does not need to "set out in detail the facts upon which he bases his claim." *Gibson,* 355 U.S. at 47, 78 S.Ct. 99. Rather, "all the Rules require is a 'short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.; see* Fed.R.Civ.P. 8. On a motion to dismiss, "the facts stated in [the plaintiff's] complaint and all reasonable inferences therefrom are taken as true." *Stephens v. Dep't of Health & Human Servs.,* 901 F.2d 1571, 1573 (11th Cir.1990); *Jackson v. Birmingham Bd. of Educ.,* 544 U.S. 167, 171, 125 S.Ct. 1497, 161 L.Ed.2d 361 (2005). The Eleventh Circuit has stated that "the threshold of sufficiency to which a complaint is held at the motion-to-dismiss stage is 'exceedingly low.'" *United States v. Baxter Int'l, Inc.,* 345 F.3d 866, 880 (11th Cir.2003).

## ANALYSIS

In its motion to dismiss, Defendant argues that Plaintiff's complaint should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted. Defendant argues that Plaintiff lacks standing to bring a claim for conversion of a negotiable instrument pursuant to § 673.4201(1) because there was no constructive or actual delivery of the Check to the payees (the Chuvens) or their agent; therefore, as the Chuvens' assignee, Plaintiff cannot bring a claim for statutory conversion pursuant to § 673.4201(1). Defendant further argues that as a result of the action to quiet title to their property, the Chuvens had no financial interest in the Check at the time they assigned their claims to Plaintiff; therefore, as the Chuvens' assignee, Plaintiff has no financial interest in the Check and has no right to recovery pursuant to § 673.4201(2).

In response, Plaintiff argues that it has adequately alleged delivery-thus satisfying the pleading requirements of a claim for conversion of a negotiable instrument pursuant to § 673.4201(1)-by alleging that "the maker of the check intended that the check would be an enforceable obligation against her according to its terms," and that the maker "surrendered control of the check with that intention." (Resp. at 4; Compl. ¶ 5.) Plaintiff further argues that the Chuvens did have a financial interest in the Check at the time they assigned their rights to sue Defendant because, as alleged in the complaint, Plaintiff paid Home Equity Mortgage Company's unpaid balance on the mortgage loan thereby removing the encumbrance from the Chuven's property, and in exchange, it acquired the Chuvens' claims arising out of the transaction. (Resp. at 6–7; Compl. ¶ 8 & Ex. D.)

In deciding Defendant's motion to dismiss, the Court first must determine whether Florida law precludes a payee from bringing a claim for conversion of a negotiable instrument absent delivery (actual or constructive) of the instrument to either *the payee, a copayee, or the payee's agent.* Then the Court must determine whether Plaintiff has adequately alleged delivery of the Check in satisfaction of the pleading requirements of a claim for conversion of a negotiable instrument pursuant to § 673.4201(1). If the Court determines that Plaintiff has adequately alleged delivery of the Check, then the Court must consider Defendant's argument that the facts alleged in the complaint preclude any recovery in this action as a matter of law pursuant § 673.4201(2).

Florida Statutes section § 673.4201 provides in relevant part:

(1) The law applicable to conversion of personal property applies to instruments. An instrument is also converted

if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive the payment. An action for conversion of an instrument may not be brought by: (a) The issuer or acceptor of the instrument; or

(b) A payee or indorsee who did not receive delivery of the instrument either directly or indirectly or through delivery to an agent or copayee.

(2) In an action under subsection (1), the measure of liability is presumed to be the amount payable on the instrument, but recovery may not exceed the amount of the plaintiff's interest in the instrument.

Defendant contends that under § 673.4201(1)(b), a payee may only sue for conversion of a check if there was delivery of the check to either the payee, a copayee, or an agent of the payee. (MTD at 7–8.) According to Defendant, "even if the drawer issues a check and attempts to deliver it, and thereby evinces an intent to make the check enforceable against the drawer, delivery under § 673.4201 does not occur unless there is delivery to a person who is the payee, a copayee, or the payee's agent." (MTD at 9.) Defendant argues that the complaint misguidedly focuses on the "state of mind of the drawer of the Check rather than on the delivery to the agent or payee." (MTD at 9.) Defendant urges the Court to infer from the complaint that the Check was delivered to the imposter sellers or another person-not the Chuvens-who ultimately gave the Check to the imposter sellers. (MTD at 9.) According to Defendant, the only way Plaintiff can have standing to bring a claim for conversion pursuant to § 673.4201 is if the imposter sellers-having received delivery (actual or constructive) of the Check-were the Chuvens' agents for purposes of delivery. (MTD at 9–10.) Defendant argues that the complaint does not allege or establish an agency relationship between the Chuvens and the imposter sellers. (MTD at 10–11.) Thus, according to Defendant, because the complaint fails to allege or establish delivery of the Check either to the Chuvens or to an agent of the Chuvens, the complaint must be dismissed for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6). (MTD at 11.) Plaintiff argues in response that an allegation of constructive delivery to any third person is sufficient to satisfy the pleading requirements of a claim for conversion of a negotiable instrument pursuant to § 673.4201. According to Plaintiff, § 673.4201(1)(b) may be satisfied by an allegation that the maker or the drawer of the Check intended that the Check be an enforceable obligation and that he or she surrendered control of the check with that intention, placing it in the power of the payee *or some third person.* (Resp. at 4.)

Florida Statutes section § 673.4201 was enacted by Laws 1992, c. 92–82, § 2, eff. Jan. 1, 1993, and is a modification of § 673.419, which was repealed by Laws 1992, c. 92–82, § 1, eff. Jan. 1, 1993. The former § 673.419 provided:

(1) An instrument is converted when:

(a) A drawee to whom it is delivered for acceptance refuses to return it on demand; or

(b) any person to whom it is delivered for payment refuses on demand either to pay or to return it; or

(c) it is paid on a forged indorsement.

(2) In an action against a drawee under subsection (1) the measure of the drawee's liability is the face amount of the instrument. In any other action under subsection (1) the measure of liability is

presumed to be the face amount of the instrument.

Fla. Stat. § 673.419 (1991) (repealed 1992, effective Jan. 1, 1993). Thus, under the former § 673.419, a check was converted if paid on an unauthorized or forged endorsement, but the former statutory provision did not expressly address whether a payee who never received delivery of the check could sue for conversion of it. *See* Fla. Stat. Ann. § 673.4201, cmt. 1.

According to Florida case law, a payee must allege and prove delivery of the check in order to sue for its conversion. *See, e.g., City Nat'l Bank of Miami v. Wernick,* 368 So.2d 934 (Fla. 3d DCA 1979), *cert. denied,* 378 So.2d 350 (Fla. 1979). The *Wernick* court explained that the "rule that the 'delivery' of an instrument is indispensible to its effectiveness is one of the most ancient and basic in commercial law," and that "[a]s a general rule, a negotiable instrument, like any other written instrument, has no legal inception or valid existence as such until it has been delivered in accordance with the purpose and intention of the parties. Until that is done, it is a nullity and not the subject of ownership. The payee acquires no rights in the instrument prior to delivery." *Id.* at 936. Florida courts have recognized that "constructive delivery" of a negotiable instrument, which occurs "only when 'the maker in some way evinced an intention to make it an enforceable obligation against himself, according to its terms, by surrendering control over it and intentionally placing it under the power of the payee or of some third person for his use,'" may constitute delivery of a check capable of giving rise to a cause of action for its conversion. *Id.* at 937 (quoting 11 Am. Jur.2d, *Bills and Notes,* § 276 (1963)). *See Florida Nat'l Bank v. Isaac Indus., Inc.,* 610 So.2d 57, 59 (Fla. 3d DCA 1992) (finding constructive delivery occurred where the maker of a check issued the check to the payee and gave it to a third party that had an outstanding obligation to the payee, and the check issued to the payee was in the exact amount of the outstanding obligation, and the maker surrendered the check to the third party for the use and benefit of the payee); *Bloempoort v. Regency Bank of Florida,* 567 So.2d 923, 924 (Fla. 2d DCA 1990) (finding constructive delivery occurred where the purchasers of a house gave a mortgage on the house to the sellers and the purchasers later refinanced the mortgage without the sellers' knowledge, and the maker of the check, a closing agent, wrote a check in the sellers' name in the exact amount of the unpaid balance on the mortgage and gave it to the purchasers who, having an outstanding obligation to the sellers, forged the sellers' signature and cashed the check).

■■■ Defendant argues that with the Florida legislature's repeal of § 673.419 and its concurrent enactment of § 673.4201 (Florida's adoption of the statutory conversion provision within the revised Article 3 of the Uniform Commercial Code (UCC)), "the prior Florida cases on constructive delivery no longer represent the law in Florida on the delivery issue if, as here, the third party receiving the check is not the agent of the payee." (MTD at 7.) Plaintiff argues in opposition that "constructive delivery of a negotiable instrument, *even to a thief,* is still a valid basis to establish conversion" pursuant to § 673.4201, and that "the state of mind of the maker of the check is still a material issue." (Resp. at 3–4 (emphasis added).) The Florida Supreme Court has not directly addressed the question of whether constructive delivery of a negotiable instrument to the forger may be sufficient to constitute constructive delivery for the purposes of alleging a conversion claim pursuant to § 673.4201. Accordingly, this

Court addresses the question as one of first impression, which must be resolved "in a manner consistent with established general precepts of policy construction in place in the State of Florida."[2] *Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church*, 420 F.3d 1317, 1326 (11th Cir. 2005).

The Comment to § 673.4201, which lends insight into the legislative intent in adopting § 673.4201, explains that under the former Article 3 of the UCC, there was a split of authority on the issue of "whether a payee who never received the instrument is a proper plaintiff in a conversion action." Fla. Stat. Ann. § 673.4201, cmt. 1. The Comment makes clear that pursuant to § 673.4201, the payee has no conversion action where the payee, a copayee, or the payee's agent never received delivery of the check.[3] Fla. Stat. Ann. § 673.4201, cmt. 1. It appears from the plain language of § 673.4201 and the commentary that constructive delivery of a negotiable instrument to the forger or a third party who is not a copayee or the payee's agent is not sufficient to constitute delivery for the purposes of alleging a conversion claim pursuant to § 673.4201. While no Florida court appears to have

---

2. Florida law indisputably governs the substantive issues in a case where the federal court's jurisdiction is based on diversity of citizenship. *Guideone*, 420 F.3d at 1326 n. 5. The Eleventh Circuit has explained that where the Florida Supreme Court "has not spoken definitively on the issues" presented in a case before the federal court on the basis of diversity jurisdiction, the court must "look to the relevant decisions of Florida's intermediate appellate courts." *Id.* (citing *State Farm Fire & Casualty Co. v. Steinberg*, 393 F.3d 1226, 1231 (11th Cir.2004)). Moreover, "[a] lack of explicit Florida case law on an issue does not absolve [the federal court] of [its] duty to decide what the state courts would hold if faced with it". *Id.* (citing *Arceneaux v. Texaco, Inc.*, 623 F.2d 924, 926 (5th Cir.1980) (citations omitted)). "In the absence of precedents from Florida's intermediate appellate courts," the federal court sitting in diversity "may consider the case law of other jurisdictions that have examined similar policy provision." *Id.* (citing *Steinberg*, 393 F.3d at 1231 (citations omitted)). The federal court's "objective is to determine issues of state law as [the court] believes the Florida Supreme Court would." *Id.* Therefore, "a federal court attempting to forecast state law must consider whatever might lend it insight, including 'relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand.'" *Id.* (quoting *McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657, 663 (3d Cir.1980)).

3. Specifically, the Comment states: "The typical case was one in which a check was stolen from the drawer or in which the check was mailed to an address different from that of the payee and was stolen after it arrived at that address. The thief forged the indorsement of the payee and obtained payment by depositing the check to an account in a depository bank. The issue was whether the payee could bring an action in conversion against the depository bank or the drawee bank. In revised Article 3 ... the payee has no conversion action because the check was never delivered to the payee. Until delivery, the payee does not have any interest in the check. The payee never became the holder of the check nor a person entitled to enforce the check. Nor is the payee injured by the fraud. Normally the drawer of a check intends to pay an obligation owed to the payee. But if the check is never delivered to the payee, the obligation owed to the payee is not affected. If the check falls into the hands of a thief who obtains payment after forging the signature of the payee as an indorsement, the obligation owed to the payee continues to exist after the thief receives payment. Since the payee's right to enforce the underlying obligation is unaffected by the fraud of the thief, there is no reason to give any additional remedy to the payee. The drawer of the check has no conversion remedy, but the drawee is not entitled to charge the drawer's account when the drawee wrongfully honored the check.... The loss will fall on the person who gave value of the thief for the check." Fla. Stat. Ann. § 673.4201, cmt. 1.

addressed this issue directly, the decisions construing § 673.4201 are consistent with this reading.

The Court notes that in opposition to the motion to dismiss Plaintiff cites *Racso Diagnostic, Inc. v. Community Bank of Homestead*, 735 So.2d 519, (Fla. 3d DCA 1999), *Ishii v. Welty*, 1998 WL 1064846 (M.D.Fla.1998), and *Harmony Homes, Inc. v. United States*, 936 F.Supp. 907 (M.D.Fla.1996). The *Racso* and *Ishii* cases are consistent with construing § 673.4201 to require actual or constructive delivery to *the payee, the copayee or the payee's agent* before a claim for conversion may be brought. The *Harmony Homes* case does not involve a claim for conversion pursuant to § 673.4201 or the former § 673.419 and does not refer to or discuss delivery for the purposes of § 673.4201.

In *Racso Diagnostic, Inc. v. Community Bank of Homestead*, 735 So.2d 519, (Fla. 3d DCA 1999), the court reversed a final summary judgment entered in favor of the defendant because it found that there were genuine issues of material fact as to whether certain stolen checks written to the order of the plaintiff, but paid to a thief by the defendant over forged endorsements, were constructively delivered to the plaintiff (payee) when they were properly addressed to the plaintiff and deposited in the mail by the drawers. *Id.* at 520. The *Racso* court explained that if "the factual issue of constructive delivery [were] ultimately decided in [the plaintiff's] favor, as a holder of the checks ... [the plaintiff] would be a proper party plaintiff in a conversion action for payment of the checks over a forged endorsement." *Id.* The *Racso* court clarified that there "ha[d] been no determination by the trial court that the checks written to [the plaintiff] were paid to a thief." *Id.* Presumably, the

assumption underlying the *Racso* decision was that there must have been constructive delivery *to the payee* (or the copayee or the payee's agent) in order for the payee to be a proper party plaintiff in a conversion action pursuant to § 673.4201.

In *Ishii v. Welty*, 1998 WL 1064846 (M.D.Fla.1998), one of the defendants (a bank) moved to dismiss the plaintiff's conversion claim, arguing that the plaintiff lacked standing to pursue the claim "because neither actual nor constructive delivery of the [allegedly converted] cashier's checks was effected." *Id.* at *9. The *Ishii* court denied the motion, finding that, construing the allegations in the complaint in the light most favorable to the plaintiff, the delivery element had been adequately alleged because the plaintiff (the payee) alleged that the checks in issue had previously been constructively delivered to her insofar as the checks had been delivered to individuals who were acting as her agents. *Id.* at **2, 5, 9. Significantly, in opposing the motion to dismiss, the *Ishii* plaintiff contended that the fact that one of the individuals to whom the checks were delivered had converted the funds did not mean that he could not act as the *Ishii* plaintiff's agent for purposes of delivery of the check. *Id.* at *5. The *Ishii* court agreed that the individual who converted the check could have been acting as the payee's agent for purposes of delivery, and presumably, the assumption underlying the *Ishii* decision was the *Ishii* plaintiff could only have standing to bring a claim for conversion pursuant to § 673.4201 if the individuals who received delivery of the converted checks were the *Ishii* plaintiff's agents for purposes of delivery.

Finally, the decisions of courts in other jurisdictions that have adopted the revised Article 3 provision identical to § 673.4201

support this reading.[4] *See, e.g., Berhow v. The Peoples Bank,* 423 F.Supp.2d 562, 564, 568 (S.D.Miss.2006) (finding, where a bank loan officer utilized the names of existing customers of the bank to convert and obtain the bank customers' funds for himself, and the plaintiff/payee (a bank customer) had no knowledge of the fraudulent transactions, that the plaintiff/payee had no standing to bring a cause of action for statutory conversion (under Mississippi's adopted revised Article 3 UCC provision identical to Florida's § 673.4201) because the payee never received delivery of any of the instruments giving rise to the claim); *Olympic Title Ins. Co. v. Fifth Third Bank,* 2002 WL 31398652 (Ohio Ct.App.2d 2002) (finding-in an action arising out of a mortgage loan refinancing transaction where the mortgage-holder (payee) was to receive a check in the amount of the mortgage loan, but a thief received delivery of the check from the closing agent-that the payee's assignee lacked standing to bring a cause of action for statutory conversion (under Ohio's adopted revised Article 3 UCC provision identical to Florida's § 673.4201) because the payee never received delivery of the check, and therefore retained its first mortgage position on the property).

 For the foregoing reasons, the Court concludes that Florida law precludes a payee from bringing a claim for conversion of a negotiable instrument absent delivery (actual or constructive) of the instrument to either *the payee, a copayee, or the payee's agent.* Accepting the allegations in the complaint as true for the purposes of deciding the motion to dismiss, and construing the allegations in the light most favorable to Plaintiff, the Court finds that Plaintiff has failed to adequately allege delivery of the Check in satisfaction of the pleading requirements of a claim for conversion of a negotiable instrument pursuant to § 673.4201(1). Plaintiff has not alleged or established actual or constructive delivery to the payees (the Chuvens), nor has it alleged or established an agency relationship between the Chuvens and the individual or individuals who received delivery of the Check.[5]

Furthermore, given the facts that Plaintiff has alleged, there is no way that the complaint could be amended to cure these defects. The Court cannot conceive of a way that the Check could have been delivered to either the Chuvens or their agent. Although Plaintiff does not allege who did

---

**4.** Florida courts recognize that "[o]ne of the purposes of the UCC is '[t]o make uniform the law among the various jurisdictions.'" *Tropical Jewelers, Inc. v. Nationsbank, N.A.,* 781 So.2d 392, (Fla. 3d DCA 2000) (quoting Fla. Stat. § 671.102(2)(c) and citing *Mason v. Avdoyan,* 299 So.2d 603, 606–07 (Fla. 4th DCA 1974)). Likewise, the Florida Supreme Court, "[w]riting about a predecessor to the UCC," stated: "'An act like the Uniform Negotiable Instruments Law ... should receive a uniform interpretation and construction in all of the states where it prevails if the beneficial purpose of having a uniform law on the subject is to be subserved.'" *Id.* (quoting *Valentine v. Hayes,* 102 Fla. 157, 135 So. 538, 540 (1931)).

**5.** To establish an actual agency relationship under Florida law, the plaintiff must show:

"(1) acknowledgment by the principal that the agent will act for him, (2) the agent's acceptance of the undertaking, and (3) control by the principal over the actions of the agent." *Goldschmidt v. Holman,* 571 So.2d 422, 424 n. 5 (Fla.1990) (citing Restatement (Second) of Agency § 1 (1957)). To establish apparent agency, the plaintiff must show: "(a) a representation by the purported principal; (b) a reliance on that representation by a third party; and (c) a change in position by the third party in reliance on the representation." *Fernandez v. Florida Nat'l College, Inc.,* 925 So.2d 1096 (Fla. 3d DCA 2006) (quoting *Roessler v. Novak,* 858 So.2d 1158, 1161 (Fla. 2d DCA 2003) and citing *Amstar Ins. Co. v. Cadet,* 862 So.2d 736, 742 (Fla. 5th DCA 2003)).

receive delivery of the Check, it can only be inferred that the Check was delivered (either actually or constructively) to the imposter sellers. Plaintiff does not allege that the Chuvens were in any way involved in the fraudulent transaction. Therefore, there is no way that the Chuvens could have received actual or constructive delivery of the Check. Likewise, despite the fact that Florida case law recognizes that an individual who ultimately converts a check could have been acting as the payee's agent for purposes of delivery-even construing the facts alleged in the complaint in the light most favorable to Plaintiff-in this case whoever did receive delivery of the Check could not have been serving as the Chuvens' agent for purposes of delivery. Therefore, because the complaint fails to allege or establish delivery of the Check either to the Chuvens or to an agent of the Chuvens, the complaint must be dismissed for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6).[6] Accordingly, it is hereby

ORDERED AND ADJUDGED that Defendant's Motion to Dismiss is GRANTED. It is further

ORDERED AND ADJUDGED that the cause is DISMISSED in accordance with this Order.

---

6. Because the Court finds that Plaintiff has failed to adequately allege delivery of the Check in satisfaction of the pleading requirements of a claim for conversion of a negotiable instrument pursuant to § 673.4201(1), the Court declines to address Defendant's additional argument that the facts alleged in the complaint preclude any recovery in this action as a matter of law pursuant § 673.4201(2).