**EMPIRE OF AMERICA FEDERAL SAVINGS BANK, Resolution Trust Corporation, as Conservator of Empire of America Federal Savings Bank, Plaintiff,**

v.

**Donald L. BRADY, Defendant.**

**No. 90–8025–CIV.**

United States District Court,
S.D. Florida.

Nov. 4, 1991.

Robert Gilbert of Steel, Nector & Davis, West Palm Beach, Fla., for plaintiff.

Bruce Parrish and Orrin Beilly, West Palm Beach, Fla., for defendant.

PAINE, District Judge.

This matter comes before the court on the Defendant's, DONALD L. BRADY ("BRADY"), Motion for Remand (DE 5) and the Plaintiff's, RESOLUTION TRUST CORPORATION ("RTC"), Motion for Rehearing and to Vacate Final Judgment and Order Denying Motion to Strike Inadmissible Parol Evidence in Accordance with the Eleventh Circuit's Order of Remand (DE 14). Having reviewed the record, the memoranda of counsel and relevant authorities, the court enters the following order.

## BACKGROUND

The following facts are agreed to by the parties. At all times relevant, Florida Eastern Development & Management Corporation ("Florida Eastern") was engaged in the formation and syndication of real estate partnerships. Usually this would involve the purchase of a piece of property and the establishment of a limited partnership, in which Florida Eastern was a general partner, to generate revenue. In exchange for units or shares in a limited partnership, investors could either pay cash or execute or assign a negotiable promissory note ("Investor Note") payable to Florida Eastern.

On April 18, 1986, Florida Eastern entered into an agreement with EMPIRE OF AMERICA FEDERAL SAVINGS BANK ("EMPIRE"), whereby EMPIRE would extend a warehouse line of credit equal to 85% of the face value of Investor Notes that Florida Eastern would endorse or assign to the bank. When Florida Eastern sought an advance on the line of credit, it would forward to EMPIRE, at least two business days prior to the date of the proposed advance, one or more endorsed Investor Notes, copies of the partnership subscription agreement, photocopied tax re-

turns and other financial statements of each limited partner whose Investor Notes constituted the collateral for the advance. Any draw on the line of credit was required to be repaid within 180 days of the date the advancement of the funds.

In July of 1986, Florida Eastern endorsed and assigned to EMPIRE four Investor Notes which are the subject of this litigation. The original payee on the Investor Notes was a limited partnership of which Florida Eastern was a general partner, Atlantis Partners, Ltd. ("Atlantis"). The Investor Notes, executed as shown below, contain endorsements from Atlantis to Florida Eastern and from Florida Eastern to EMPIRE.

MAKER'S SIGNATURE:        Donald L. Brady (handwritten)

Print Name                Mortgage Investors Trust, Inc. (typed)

CO–MAKER'S SIGNATURE      N/A (typed)

Print Name

---

The signature block was the only place in the four Investor Notes that mentioned either Donald L. Brady ("BRADY") or Mortgage Investors Trust, Inc. ("Mortgage") and did not specify what position that BRADY, if any, may have held with Mortgage. EMPIRE subsequently received the Investor Notes, a cover letter and packet of papers entitled "Execution Documents." This packet contained a Purchaser Questionnaire, Subscription Agreement, signature page, special power of attorney, broker/dealer representative questionnaire, acknowledgement of receipt of documents, estoppel letter and a financial statement for Mortgage. On page 3 of the Partnership Questionnaire, Mortgage is listed as the "investor" and the signature page of the subscription agreement provides that the ownership registration of the partnership units was to be in the name of Mortgage. Any provision in the "Execution Documents" requiring a signature, was signed by BRADY. As was the case with the Investor Notes, there was no indication in these places as to what position that BRADY may have held with Mortgage.

No payments were ever made under the four Investor Notes and Florida Eastern eventually defaulted on its obligation to EMPIRE. In January of 1989, the Plaintiff initiated this action in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County asserting that BRADY was personally obligated under the Investor Notes for $112,000.00 in principal, $67,-387.50 in accrued interest through December 13, 1989, $56.25 in per diem interest each day thereafter, along with attorneys' fees and costs. On December 13, 1989, trial was commenced, at which time BRADY solicited extensive testimony on the issue of whether the immediate parties to the transaction intended for him to be personally liable on the Investor Notes. EMPIRE objected to this line of questioning on the grounds that this parol evidence inadmissible against EMPIRE pursuant to Florida Statute § 673.403(2)(b). On numerous occasions, the state court judge overruled the Plaintiff's objections.[1]

The testimony proffered indicated that Ruth Tune ("Tune"), a former employee of Florida Eastern, who had delivered to Defendant the Investor Notes for execution, stated that it was her opinion that neither immediate parties intended BRADY to be obligated on the Investor Notes. By order dated December 28, 1989, EMPIRE's *ore tenus* Motion was denied.

---

1. Prior to trial, the state court orally denied EMPIRE's Motion in Limine to exclude evidence under § 673.403(2)(b). Additionally, EMPIRE moved *ore tenus* at the conclusion of trial to strike any evidence regarding whether the

Florida Eastern nor Atlantis intended BRADY to be personally liable on the Notes. BRADY also took the stand and testified that he signed the Investor Notes solely in a representative capacity for Mortgage.

By order dated December 28, 1989, the trial court entered a final judgment in favor of BRADY based on two findings:

1. That it was established by the defendant by the greater weight of the credible evidence between the immediate parties to the Promissory Notes, Donald L. Brady and Atlantis Partners, Ltd., that Donald L. Brady signed the Promissory Notes solely as an officer of Mortgage Investors Trust, Inc. and not individually.

2. That the Plaintiff, Empire of America Federal Savings Bank, had inferable knowledge under § 671.210(25) that Donald L. Brady only intended to sign the notes as representative of Mortgage Investors Trust, Inc. and, therefore, Plaintiff is not a holder in due course.

■ On January 24, 1990, the Office of Thrift Supervision, the federal agency which regulates federally insured savings and loan associations, declared EMPIRE insolvent and appointed the RTC as its conservator. Thereafter, on January 29, 1990, the Plaintiff removed the action to this court (DE 1) and filed a Notice of Appeal (DE 3) of the state court's Final Judgment with Eleventh Circuit. On March 20, 1991, this proceeding was remanded (DE 15) for the undersigned to address the Plaintiff's Motion for Rehearing and to Vacate Final Judgment and Order Denying Motion to Strike Inadmissible Parol Evidence in Accordance with the Eleventh Circuit's Order of Remand (DE 14).[2]

## IS YOU IS OR IS YOU AIN'T MY AGENT

Because the contested Investor Notes are negotiable instruments, the law which governs this transaction is found in Article 3 of the Uniform Commercial Code. Although an individual who signs a negotiable instrument as the authorized agent of another normally does not expect to assume liability for his principal's obligation, under Florida Statute § 673.403(2) an agent's liability turns almost entirely on whether the written symbols he uses sufficiently disclose his agency status:

(2) An authorized representative who signs his own name to an instrument:

(a) Is personally obligated if the instrument neither names the person represented nor shows that the representative signed in a representative capacity;

(b) Except as otherwise established between the immediate parties, is personally obligated if the instrument names the person represented but does not show that the representative signed in a representative capacity, or if the instrument does not name the person represented but does show that the representative signed in a representative capacity.

Thus, pursuant to § 673.403(2)(a), the sole signature of an agent, in the absence of any indication that it was done in a representative capacity, gives rise to personal liability. *MJZ Corp. v. Gulfstream First Bank & Trust*, 420 So.2d 396, 398 (Fla.4th Dist.Ct.App.1982). While this policy may seem unduly harsh, the presumptive construction against an agent furthers the intent of the Uniform Commercial Code "to promote certainty and definiteness in commercial paper." *Havatampa Corp. v. Walton Drug Co., Inc.*, 354 So.2d 1235, 1237 (Fla.2d Dist.Ct.App.1978).

■ Since even the most careless agent usually will name his principal, Section 673.403(2)(b) comes into play if (1) either the name of the principal is shown, but there is no indication that the agent acted in a representative capacity; or (2) the

---

**2.** In *Jackson v. American Sav. Mortg. Corp.*, 924 F.2d 195, 198 (11th Cir.1991) the Eleventh Circuit held that removed state court proceedings are to be treated as those of the district court. Because a district court is able to reexamine its own proceedings, it "may dissolve or modify injunctions, orders, and all other proceedings which have taken place in state court prior to removal." Id. (quoting *Maseda v. Honda Motor Co.*, 861 F.2d 1248, 1252 (11th Cir.1988)). Consequently, the entering of judgment by a state court does not foreclose subsequent proceedings upon removal to federal district court. *Maseda*, 861 F.2d at 1252.

name of the principal is not shown, but the negotiable instrument indicates that the signer acted as an agent. In such instances, parol evidence is admissible in litigation between immediate parties to supply the missing information: either the identity of the principal or the signer's agency. *Medley Harwoods, Inc. v. Novy,* 346 So.2d 1224 (Fla.3d Dist.Ct.App.1977); *Dynamic Homes, Inc. v. Rogers,* 331 So.2d 326 (Fla. 4th Dist.Ct.App.1976); *Speer v. Friedland,* 276 So.2d 84 (Fla.2d Dist.Ct.App.1973).

## TO BOLDLY GO WHERE NO FLORIDA COURT HAS GONE BEFORE

■ The present case, however, presents the question of whether an agent may introduce parol evidence to avoid personal liability when the litigation is not between *immediate* parties. Since neither the Florida Supreme Court nor a Florida Court of Appeal has yet to address this issue, this court finds it appropriate to review decisions in other jurisdictions where the same issue has been raised and provisions identical to Section 673.403(2)(b) have been interpreted. *Mason v. Avdoyan,* 299 So.2d 603, 606 (Fla.4th Dist.Ct.App.1974) (in the interest of achieving a consistent interpretation of Uniform Laws, it is pertinent to review holdings in other jurisdictions where the particular act is in force).

Those courts have all answered the question in the negative. When litigation does not involve immediate parties, such as an action by an assignee of a note against its maker, parol evidence is not admissible to show intent in signing for the purpose of relieving liability. *Federal Deposit Ins. Corp. v. Tennessee Wildcat Services, Inc.,* 839 F.2d 251, 255 (6th Cir.1988); *see Federal Deposit Ins. Corp. v. Galloway,* 613 F.Supp. 1392, 1398 (D.Kan.1985), *rev'd on other grounds,* 856 F.2d 112 (10th Cir. 1988); *Federal Deposit Ins. Corp. v. Allen,* 584 F.Supp. 386, 398 (E.D.Tenn.1984); *American Exchange Bank v. Cessna,* 386 F.Supp. 494, 496 (N.D.Okla.1974). Thus, since the signer cannot "supply the missing

ingredient," either the identity of the principal or the signer's agency, the individual executing the note is personally liable. *Tennessee Wildcat,* 839 F.2d at 255.

■ Such is the case here. Because EMPIRE was not an immediate party to the Investor Notes, the state court improperly admitted and considered parol evidence for the purpose of relieving BRADY of liability. Nevertheless, the Defendant would urge this court that Florida Statute § 673.403(3) [3] precludes a finding of personal obligation because "the promissory notes themselves establish that they were signed solely in a representative capacity." That statute, however, is inapplicable to the facts at hand. To fall within the protection of Section 673.403(3), three requirements must be satisfied: (1) the represented organization be named; (2) the agent must sign his name and office; and (3) the name of the principal and signature and office of the agent must be "in reference to each other so that reasonable men dealing with the instrument would understand from the face of the note that the agent's signature was in a representative capacity only, and not in an individual capacity." *Havatampa,* 354 So.2d at 1237. An examination of the instruments indicates that this standard has not been met. Because BRADY did not sign the Investor Notes in a manner such as "Mortgage Investors Trust, Inc., Donald L. Brady, President" or "Mortgage Investors Trust, Inc. by Donald L. Brady" criteria (2) and (3) have not been met. *Id.* at 1238.

## COULDA, SHOULDA, WOULDA

BRADY also argues that § 673.403(3) is applicable because it can be inferred "as a whole" that he signed the Investor Notes in a representative capacity. In support of this contention he cites *Pollin v. Mindy Mfg. Co.,* 211 Pa.Super. 87, 236 A.2d 542 (1967) and *Valley National Bank, Sunnymead v. Cook,* 136 Ariz. 232, 665 P.2d 576 (Ct.App.1983) wherein it was held that even where the literal language of provisions

---

3. § 673.403(3) provides:
   Except as otherwise established the name of an organization preceded or followed by the

name and office of an authorized individual is a signature made in a representative capacity.

similar to § 673.403(3) had not been met, a negotiable instrument must be considered in its entirety when determining whether an agent signed in a representative capacity.

The state court apparently held on theory somewhat analogous to BRADY's contention that EMPIRE was not a holder in due course since EMPIRE had "inferable knowledge" under Florida Statute § 671.-201(25)[4] that BRADY intended to sign the notes as representative of Mortgage. It is not obvious, however, what this finding was based upon; whether it was the entirety of the Investor Notes, the documents submitted by Florida Eastern to EMPIRE, the parol evidence or a combination of all. In any event, the scope of such an examination and the position advanced by BRADY is beyond the standard set forth in Florida Statute § 673.403.

First, as stated previously, consideration of testimony as to BRADY's intent is improper because EMPIRE was not an immediate party. Second, *Havatampa* dictates that before Section 673.403(3) is applicable it must be understandable from the face of a note that an agent's signature was made in a representative capacity. This requires that represented organization be named and the agent must sign his name and office in reference to the organization. This was clearly not done in this case. No reported Florida decision has deviated from this standard and adopted the minority rule of *Pollin* and *Valley National.* Moreover, application of this liberal standard is incorrect since this litigation involves corporate promissory notes and the *Pollin* and *Valley National* decisions were limited to the context of corporate checks. Indeed, the *Pollin* and *Valley National* courts both recognized that their holdings would be different in the context of a promissory note since there is a difference in the business expectations between corporate notes and corporate checks:

[I]t is common for creditors to demand the individual promise of officers on corporate promissory notes, specially in the case of small corporations. Thus, we think a court should be more reluctant to find an agent personally liable who has signed a corporate check than in the case of a similar indorsement of a corporate note.

*Valley National,* 665 P.2d at 578 (quoting James J. White & Robert S. Summers, *Handbook of the Law Under the Uniform Commercial Code* § 13–4, at 495 (2d ed. 1980)); *see Pollin,* 236 A.2d at 545.

Third, the *Pollin* and *Valley National* courts limited their inquiry to the entirety of the negotiable instrument. These cases do not support the proposition, and research has not revealed any decisions which hold that *extrinsic papers,* such as the documents that Florida Eastern submitted to EMPIRE, should be examined and considered when determining if an agent executed an instrument in a representative capacity.

■ Moreover, even if one were to consider these documents as a whole, the undersigned's opinion would not change. Although Mortgage is listed as the "investor" in the Partnership Questionnaire and Subscription Agreement, any provision in the "Execution Documents" that required a signature was signed by BRADY. The bottom line remains that there is no indication in these extrinsic papers that BRADY did not intend to be personally obligated on the four Investor Notes.

In view of all the foregoing, it is hereby ORDERED and ADJUDGED that

(1) the Plaintiff's Motion for Rehearing and to Vacate Final Judgment and Order Denying Motion to Strike Inadmissible Parol Evidence in Accordance with the Eleventh Circuit's Order of Remand (DE 14) is GRANTED. The Final Judgment previously entered in this case is VACATED. The RTC shall have eleven days from the date of this order in which to submit (1) a proposed Final Judgment in accordance with this order and (2) affidavits and documenta-

---

**4.** Section 671.201(25) states that a person has notice of a fact when they have actual knowledge, received notice of it, or has reason to know from all the facts and circumstances known at the time.

tion in support of the nature and amount of damages it seeks to recover.

(2) the Defendant's Motion for Remand (DE 5) is DENIED. *See Jackson v. Ameri-*

*can Sav. Mortg. Corp.*, 924 F.2d 195 (11th Cir.1991); *In re Savers Federal Sav. & Loan Ass'n,* 872 F.2d 963 (11th Cir.1989).

DONE and ORDERED.

## - APPENDIX

### ATLANTIS PARTNERS, LTD.
(Promissory Note)

1 Unit
$35,100.00

July 1, 1986
4 Years

FOR VALUE RECEIVED, the undersigned ("Maker") hereby promises to pay to the order of Atlantis Partners, Ltd., a Florida Limited Partnership ("Payee"), the principal sum of Thirty Five Thousand One Hundred and 00/100 Dollars ($35,100.00) plus interest from date of note to first payment on the dates as provided below, at the rate of twelve percent (12.0%) per annum. Payment shall be made in lawful money of the United States at the business office of Atlantis Partners, Ltd., 1645 Palm Beach Lakes Boulevard, 8th Floor, West Palm Beach, Florida 33401, or at such other place as Payee or holder shall have designated by written notice to Maker.

This Note shall be binding upon Maker and his or its heirs, executors, administrators, legal representatives, successors or assigns and shall inure to the benefit of Payee and its successors indorsees, assigns or holder(s) in due course. Principal and interest on the Note shall be paid in semi-annual payments payable as follows:

A principal installment of $3,546.36 plus interest of $2,106.00 = $5,652.36 due January 1, 1987;
A principal installment of $3,759.15 plus interest of $1,893.21 = $5,652.36 due July 1, 1987;
A principal installment of $3,984.70 plus interest of $1,667.66 = $5,652.36 due January 1, 1988;
A principal installment of $4,223.78 plus interest of $1,428.58 = $5,652.36 due July 1, 1988;
A principal installment of $4,477.20 plus interest of $1,175.16 = $5,652.36 due January 1, 1989;
A principal installment of $4,745.84 plus interest of $ 906.52 = $5,652.36 due July 1, 1989;
A principal installment of $5,030.59 plus interest of $ 621.77 = $5,652.36 due January 1, 1990;
A principal installment of $5,332.38 plus interest of $ 319.98 = $5,652.36 due July 1, 1990;

As security for the faithful performance of all Maker's obligations under this Note, Maker does hereby assign, sell and set over all of Maker's rights, title and interest in Atlantis Partners, Ltd., a Florida limited partnership. Maker shall retain credit for all profits and losses of said partnership unless a default in this Note has occurred and is not remedied within 30 days following the occurrence of such default. If said default has not been remedied in 30 days, the holder may notify the General Partner and assume the Maker's interest in said partnership.

The occurrence of any of the following shall constitute a Default by Maker hereunder:

(a) If Maker shall default in the payment of principal or interest on this Note or of any other note or obligations of Maker to Payee when and as the same shall become due and payable and such default is not remedied within 10 days following the occurrence of such default; or

(b) if Maker shall commit an act of bankruptcy within the meaning of the Federal Bankruptcy Act, or any bankruptcy, receivership, insolvency, reorganization, dissolution, liquidation or other similar proceeding shall be instituted by or against Maker or all or any part of his or its property under the Federal Bankruptcy Act or other law of the United States or of any state of other competent jurisdiction.

Upon or at any time after the occurrence of any Default, the holder may declare due and payable the entire or any portion of the unpaid balance of this Note, together with interest thereon. Upon the acceleration of the entire or any portion of the unpaid balance of this Note, the holder, without prejudice to any other rights, is authorized to proceed against Maker and shall not be required to have recourse to any security given for payment of this Note.

Except as otherwise expressly provided herein, Maker, sureties, and endorsers of this Note hereby severally waive presentment, demand for payment, dishonor, notice of dishonor, protest and notice of protest, and any and all other requirements necessary to hold them liable as Maker.

The liability of Maker hereunder shall be unconditional. No act, failure or delay by the holder hereof to declare a Default as set forth herein or to exercise any right or remedy it may have hereunder, or otherwise, shall constitute a waiver of its rights to declare such Default or to exercise any such right or remedy at such time as it shall determine, in its sole discretion.

Each Maker and endorser further agree, jointly and severally, to pay all costs of collection, including a reasonable attorney's fee and all costs of levy or appellate proceedings or review, or both, in case the principal or any interest thereon is not paid at the respective maturity thereof, or in case it becomes necessary to protect the security hereof, whether suit be brought or not.

The Maker acknowledges and understands that the Payee may assign this Note to Florida Eastern Development And Management Corporation or its assignee for use as collateral to secure borrowing by the Partnership, or any other entity at the sole discretion of the General Partner.

The Maker further consents to such an assignment by the Payee and any subsequent assignment by the Partnership.

In the event that this Note is prepaid by the Maker, the Payee undertakes to obtain this Note from any assignee or subassignee, to mark this Note "Cancelled", and to deliver the Note marked "Cancelled" to the Maker.

Borrower agrees that any amount of principal and (to the extent permitted by law) interest that is not paid when due (whether at stated maturity, by acceleration or otherwise) shall bear interest from such due date until paid in full at a rate of 1 1/2 per month per annum.

As security for the prompt and unconditional payment of the Maker's obligations to the holder of the Note, delivered in partial payment of the subscription price of his unit or units of limited partnership interest in the Payee (the "Units"), the Maker hereby grants to the holder of this Note a security interest in and to the Units and hereby recognizes and admits such holder's right to require the Maker to assign to it the Maker's full right, title and interest in said Units and to require the Maker to sign financing statements, continuation statements or any other statements required to perfect or maintain the security interest of the correct or complete, or cause to be corrected or completed any financing statements, continuation statements or other such documents which have been signed by the Maker. It is further agreed that if the Maker shall fail to make any payment on this Note when the same is due and payable, upon the expiration of 30 days' notice and right to cure, the holder of this Note, may in addition to any other remedy available to it, to enforce the payments due hereunder, sell Units at public or private sale, with notice to the Maker, at a price determined within the sole discretion of the holder and to apply the proceeds of such sell first to any expenses incurred by the holder the sale of such Units, and to apply the balance of the proceeds towards the Maker's obligations hereunder. Maker shall remain liable for any deficiency remaining hereunder.

The Maker hereby acknowledges that this Note will be assigned by Payee.

Any and all notices or other communications required or permitted to be given under this Note shall be in writing and shall be deemed to have been duly given upon personal delivery or the mailing thereof by certified or registered mail (a) if to the Maker, addressed to him or it at his or its address set forth below and (b) if to the Payee, addressed to Atlantis Partners, Ltd., 1645 Palm Beach Lakes Boulevard, 8th Floor, West Palm Beach, Florida 33401 (or at such other address as any person or entity entitled to receive notices may specify by written notice given as aforesaid).

This Note may not be changed or terminated orally.

MAKER'S SIGNATURE
Print Name:  MORTGAGE INVESTORS TRUST, INC.

CO-MAKER'S SIGNATURE   N/A
Print Name:

ADDRESS  5200 N. Dixie, Apt. 2305

West Palm Beach, FL 33407

MAKER'S TELEPHONE: (home) (305) 848-8495

(business) (305) 686-3500

## A S S I G N M E N T S

Pay to the Order of Florida Eastern Development
and Management Corporation

ATLANTIS PARTNERS, LTD.

By
   Atlantic Management & Consulting Corporation
   and Harry Schreiber, President and Individual
   Co-General Partner

Pay to the Order of Empire of America Federal Savings Bank
with Full Recourse

FLORIDA EASTERN DEVELOPMENT AND MANAGEMENT CORPORATION

By:  Ruth Tune
   Florida Eastern Development and Management Corporation
   and Ruth Tune, Treasurer