771 So.2d 579 (2000)
AMERISURE INSURANCE COMPANY, Appellant,
v.
GOLD COAST MARINE DISTRIBUTORS, INC. and Donald Mains, Appellees.
No. 4D00-145.
District Court of Appeal of Florida, Fourth District.
November 1, 2000.
Kara Berard Rockenbach of Gaunt, Pratt, Radford & Methe, P.A., West Palm Beach, for appellant.
Harold E. Patricoff and Michael V. Herskowitz of Shutts & Bowen LLP, Miami, for appellees.
HAZOURI, J.
Amerisure Insurance Company (Amerisure) appeals a final judgment holding that it had a duty to defend its insureds, Gold Coast Marine Distributors, Inc. (Gold Coast) and Donald Mains (Mains), as well as to afford coverage and indemnification of a claim made against them for libel and *580 slander under the "advertising injury" clause of a Commercial General Liability Insurance Policy (CGLP). We reverse.
On October 1, 1994, M.Y.D. Marine Distributors, Inc. (MYD), a distributor of paint products and a business competitor of Gold Coast, filed a lawsuit naming Gold Coast and Mains, its chief executive officer, as two of a list of defendants. The initial MYD complaint alleged: a federal civil RICO violation (Count I), a Florida civil RICO violation (Count II), a pattern of racketeering activity and damages pursuant to sections 772.101-772.19, Florida Statutes (1993), a violation of the Civil Remedies for Criminal Practices Act (Count III), tortious interference with an advantageous business relationship (Count IV), a federal Sherman Antitrust violation (Count V), a federal Clayton Act and Robinson-Patman Act Antitrust violation (Count VI), a violation of Florida Restraint of Trade laws (Count VII), violation of section 817.416, Florida Statutes (1993), criminalizing fraudulent business practices and providing civil remedies (Count VIII) and civil conspiracy and damages therefrom (Count IX). Thereafter, MYD twice amended its complaint. In the first amended complaint, MYD dropped the counts dealing with the federal RICO violations, the federal Sherman Antitrust violations and the federal Clayton Act and the Robinson-Patman Act Antitrust violations and retained the remaining counts that were in the initial complaint. In its second amended complaint, MYD alleged a breach of contract and a breach of covenant of good faith and fair dealing (Count I), tortious interference with a contract not terminable at will (Count II), tortious interference with an advantageous business relationship or with a contract terminable at will (Count III) and violation of the Florida Restraint of Trade laws (Count IV).
Gold Coast and Mains sought coverage under the Amerisure CGLP, under the "personal injury" and/or "advertising injury" provisions, for their defense against the allegations in the MYD complaints. Amerisure denied coverage and refused to defend the MYD suit claiming that the MYD suit did not involve a "personal injury" or "advertising injury" as defined in the policy and that the exclusion for penal statute violations excluded coverage. Gold Coast and Mains thereafter retained counsel, incurred attorney fees and costs and settled the claims with MYD for $150,000.
Gold Coast and Mains brought suit against Amerisure for breach of the Amerisure CGLP. At the conclusion of a nonjury trial, the trial court granted final judgment on behalf of Gold Coast and Mains. The trial court held that the allegations in the MYD initial complaint, first amended complaint, and second amended complaint were covered under the CGLP and, therefore, Amerisure had a duty to defend and indemnify Gold Coast and Mains. The trial court assessed damages totaling $312,810.13 which included the settlement of the suit with MYD, attorneys' fees incurred in the defense of the MYD suit, the costs incurred in the defense of the MYD suit and prejudgment interest through December 13, 1999.
The general rule is that an insurance company's duty to defend an insured is determined solely from the allegations in the complaint against the insured, not by the actual facts of the cause of action against the insured, the insured's version of the facts or the insured's defenses. See Smith v. General Accident Ins. Co. of America, 641 So.2d 123, 124 (Fla. 4th DCA 1994); Marr Invs., Inc. v. Greco, 621 So.2d 447, 449 (Fla. 4th DCA 1993); Reliance Ins. Co. v. Royal Motorcar Corp., 534 So.2d 922, 923 (Fla. 4th DCA 1988); Bennett v. Fidelity & Cas. Co. of New York, 132 So.2d 788 (Fla. 1st DCA 1961). If the allegations in the complaint state facts that bring the injury within the policy's coverage, the insurer must defend regardless of the merit of the lawsuit. See Smith, 641 So.2d at 124; Klaesen Bros., Inc. v. Harbor Ins. Co., 410 So.2d 611, 612-13 (Fla. 4th DCA 1982). Furthermore, any doubt *581 about the duty to defend must be resolved in favor of the insured. See Marr Invs., Inc. v. Greco, 621 So.2d at 449.
Gold Coast and Mains rely on paragraph 37 and 38 of the initial and amended MYD complaints, as well as allegations throughout the MYD complaints that its business reputation was damaged, when arguing that Amerisure had a duty to defend pursuant to the policy provisions for "personal injury" and "advertising injury". The relevant portions of the insurance policy provide:
Insuring Agreement
a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this coverage part applies. We will have the right and duty to defend any "suit" seeking those damages.
Section V-Definitions
1. "Advertising injury" means injury arising out of one or more of the following offenses:
a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, product's or services;
10. "Personal Injury" means injury other than "bodily injury" arising out of one or more of the following offenses:
d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
(emphasis added). The portions of paragraph 37 and 38 of the MYD initial complaint and first amended complaint on which Gold Coast and Mains rely state:
In November of 1992, Mr. Dan Del Monico [officer of MYD] specifically complained to Mr. Flip Thomsen at U.S. PAINT about the illegal and unfair tactics (illegal discounts, threats, illegal interference with customers, defamation, etc.) by Defendants LEWIS MARINE, MECKE, J.LEWIS, S.LEWIS, and others.

In January of 1993, Defendant, VON DER HYDE, in conspiracy with, LEWIS MARINE, MECKE, J. LEWIS, S. LEWIS, GOLD COAST, MAINS, J-MAR, DARWICK, MERRITT, HALCOMB and other non-Defendant co-conspirators began communicating to competitors and customers of MYD and others that he was terminating MYD's distributorship contract...

(emphasis added). Various paragraphs in the MYD complaints allege damage to business reputation.
Gold Coast and Mains argue that the use of the word "defamation," allegations of "damage to business reputation" and allegation that Gold Coast and Mains communicated to MYD's customers that MYD's distributorship contract was being terminated[1] are facts that relate to slander or libel and bring MYD's claims within the policy coverage for "personal injury" or "advertising injury."
Amerisure argues that none of the allegations in any of the MYD complaints asserts a "personal injury" or "advertising injury." First, Amerisure argues that the use of the word "defamation" in MYD's initial complaint and first amended complaint is insufficient to trigger coverage. Second, Amerisure argues that none of the MYD's complaints alleges facts that potentially constitute an injury for libel or slander.
In MYD's initial complaint and first amended complaint, the word "defamation" appears in paragraph 37 without any factual support. Gold Coast and Mains are not mentioned in paragraph 37. There are no allegations in any of MYD's complaints that Gold Coast or Mains made a false *582 statement to a third party that libeled, slandered, or injured MYD's business reputation. Use of the word "defamation" without allegations of false statement to a third party does not state a cause of action for libel or slander. See Byrd v. Hustler Magazine, Inc., 433 So.2d 593, 595 (Fla. 4th DCA 1983). Therefore, there are no allegations which trigger a duty to defend.[2]
Gold Coast and Mains argue that the underlying MYD complaints do not need to allege facts that establish all the elements necessary to constitute a cause of action for libel and slander in order to trigger the duty to defend; rather, the underlying complaint merely needs to allege facts that potentially create liability for the cause of action. Gold Coast and Mains rely upon McCreary v. Florida Residential Property and Cas. Joint Underwriting Ass'n, 758 So.2d 692 (Fla. 4th DCA 1999). McCreary is inapposite.
In McCreary, the insured contended that the insurer had a duty to defend against an underlying complaint under a policy's "property damage" provision. The insurers contended that the underlying complaint created only an inference of a loss of use of property and that the inference was not sufficient to constitute "property damage" pursuant to the policy. The trial court had granted summary judgment in favor of the insurer. In reversing the summary judgment, this court stated:
However, an insurer must defend a lawsuit against its insured if the underlying complaint, when fairly read, alleges facts which create potential coverage under [sic] policy. Although the language of the Rebalko complaint does not specifically include "loss of property," Rebalko's claim that the actions of the appellants "ultimately renders unsafe and insecure Plaintiff in the use and enjoyment of his own property," when fairly read, creates a factual issue as to the loss of use of the property of the appellants.
Id. at 695 (citation omitted). Unlike McCreary, in MYD's original complaint and first amended complaint, there are no underlying facts that can be fairly read to support a claim for libel or slander.
The interpretation of an insurance policy is a question of law and is subject to a de novo review. Steuart Petroleum Co., Inc. v. Certain Underwriters at Lloyd's London, 696 So.2d 376, 379 (Fla. 1st DCA 1997). In ruling in favor of Gold Coast and Mains, the trial judge stated:
In my opinion the underlying complaint is replete throughout and inherent within what has commonly been referred to as buzz words but are really legal phrases that to me leave no doubt that there's coverage under____stemming from this section 10d.
The "buzz words" used by Gold Coast and Mains, i.e. "defamation" and "damage to reputation" are merely conclusory. Since the original complaint, the first amended complaint and second amended complaint fail to allege any underlying facts to create a duty to defend under the Amerisure CGLP, we reverse the final judgment in favor of Gold Coast and Mains and direct the trial court to enter a final judgment for Amerisure.
WARNER, C.J., and DELL, J., concur.
NOTES
[1] The allegation that MYD's distributorship contract was being terminated was in fact a true statement.
[2] At the time Gold Coast and Mains settled with MYD, the second amended complaint was the operative pleading. In the second amended complaint, there is a total absence of allegations of "defamation" or damages to "business reputation."