[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 03-12565

_____

D. C. Docket No. 02-80209-CV-KLR

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 17, 2004
THOMAS K. KAHN
CLERK

STATE FARM FIRE AND CASUALTY
COMPANY, an Illinois corporation authorized to
do business in Florida,

Plaintiff-Appellee,

versus

RICHARD STEINBERG, NORMAN FINE, et al.,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(December 17, 2004)**

Before BLACK and MARCUS, Circuit Judges, and SMITH[*], District Judge.

SMITH, District Judge:

At issue on this appeal is whether plaintiff-appellee State Farm Fire &

_____

[*]Honorable Fern M. Smith, United States District Judge for the Northern District of
California, sitting by designation.

Casualty Company ("State Farm") is obligated under its commercial general liability ("CGL") business policy to defend and indemnify its insured against a lawsuit alleging misappropriation of confidential business information. Specifically, we consider whether the policy's "advertising injury" coverage extends to the allegations at issue in the underlying lawsuit. Defendants-Appellants Richard Steinberg and Norman Fine (the "Steinberg defendants") and Steinberg Global Asset Management, Ltd. ("SGAM") appeal from the District Court's entry of a declaratory judgment in favor of State Farm, holding that there was no duty to defend or indemnify its insured in a lawsuit alleging that the defendants misappropriated trade secrets of a competing investment firm.

Following careful review of the policy language and of the allegations of the complaint in the underlying lawsuit, we conclude that State Farm has no obligation to defend or to indemnify the insureds under the policy's "advertising injury" coverage. We therefore affirm the judgment of the District Court.

## I. FACTUAL BACKGROUND

At all times relevant to this action, SGAM, of which Richard Steinberg and Norman Fine were principals, was covered by the State Farm policy at issue. The policy covers legal actions alleging any of four kinds of injury by the insured: bodily injury, property damage, personal injury or advertising injury. The

2

coverage for an advertising injury is limited to "advertising injury caused by an occurrence committed in the coverage territory during the policy period. The occurrence must be committed in the course of advertising your goods, products or services."

"Advertising injury" is defined in the policy to include:

injury arising out of one or more of the following offenses:

a. oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

b. oral or written publication of material that violates a person's right of privacy;

c. misappropriation of advertising ideas or style of doing business; or

d. infringement of copyright, title or slogan.

"Occurrence" is defined in pertinent part to mean: "the commission of an offense, or a series of similar or related offenses, which results in personal injury or advertising injury."

The policy excludes coverage for "advertising injury," *inter alia,* " arising out of the wilful violation of a penal statute or ordinance committed by or with the consent of the insured."

In 1998, the events occurred that formed the basis of a lawsuit (the

"underlying lawsuit") by Nicholson-Kenny Capital Management, Inc. ("Nicholson-Kenny") against various defendants the same year. The underlying lawsuit initially did not name the Steinberg defendants or SGAM as defendants. On April 25, 2000, however, Nicholson-Kenny filed a second amended complaint naming the Steinberg defendants and SGAM for the first time, and pleading four causes of action against them: tortious interference with business relationships; misappropriation of trade secrets; unfair competition; and civil conspiracy.[1]

The allegations of the second amended complaint are summarized as follows: Before the alleged events, Nicholson-Kenny was an investment firm managing over $80 million in assets. In May 1998, the Steinberg defendants, using SGAM as a "commercial vehicle," conspired with three Nicholson-Kenny employees to form Helios International Asset Management, Inc. ("Helios"), which was established for the unlawful purpose of tortiously interfering with plaintiff's business relationships, misappropriating trade secrets, and unfairly competing with

---

[1] Perhaps hoping to increase their chances of triggering State Farm's duty to defend, the Steinberg defendants assert on this appeal that they are entitled to seek a defense and indemnification for not only the allegations of the second amended complaint, but also the first amended complaint, in which they are not named as defendants. While they describe the second amended complaint as a "confusing 130-paragraph amendment by interlineation," it does not incorporate any of the first amended complaint by reference or otherwise rely on the other document. It "appends" allegations that are pled solely against the Steinberg defendants and SGAM and as such is sufficient for purposes of determining the coverage issues in this litigation.

plaintiff. These employees conspired with the Steinberg defendants to misappropriate confidential client information belonging to Nicholson-Kenny and on June 15, 1998, they closed and departed from Nicholson-Kenny's offices, taking with them Nicholson-Kenny's "confidential" client information. The confidential client information was not a mere "customer list" but was "a compilation that derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its use and is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." The next day, the former Nicholson-Kenny employees began serving many of Nicholson-Kenny's clients from the offices of Helios. Within three weeks, Helios was managing $60 million of assets of former Nicholson-Kenny clients, something that would have been impossible without misappropriating confidential client information. Within three months, more than 80% of Helios's clients were former clients of Nicholson-Kenny. The defendants' actions caused "substantial damage" to Nicholson-Kenny's business. The Steinberg defendants, acting in conspiracy with the former Nicholson-Kenny employees, committed theft of trade secrets, a third degree felony under Florida law.

After declining the Steinberg defendants' and SGAM's request for a defense

5

in the lawsuit, State Farm filed suit in the District Court and ultimately moved for summary judgment on all theories of coverage advanced by the Steinberg defendants.  On April 14, 2003, the District Court granted State Farm's motion.  The court held that, because the underlying complaint alleged "several types of criminal behavior when [the defendants] stole and destroyed trade secrets and confidential information protected by law," advertising injury coverage was not triggered, and further stated:  "it  cannot be the case that these terms include or even contemplated the inclusion of embezzlement and fraud and criminal taking and destruction of trade secrets and confidential information, as alleged in the complaint."  The court also held that the policy's exclusion for "wilful violation of a penal statute or ordinance" barred coverage.  This appeal ensued.

## II. DISCUSSION

### A.

We review a district court's order granting summary judgment de novo. Iraola & CIA, S.A. v. Kimberly-Clark Corp., 325 F.3d 1274, 1283 (11th Cir. 2003).  Because federal jurisdiction over this matter is based on diversity, Florida law governs the determination of the issues on this appeal.  Davis v. National Medical Enterprises, Inc., 253 F.3d 1314, 1319 n.6 (11th Cir.  2001).  In insurance coverage cases under Florida law, courts look at the insurance policy as a whole

6

and give every provision its "full meaning and operative effect." Hyman v. Nationwide Mut. Fire Ins. Co., 304 F.3d 1179, 1186 (11th Cir. 2002), citing Dahl-Eimers v. Mutual of Omaha Life Ins. Co., 986 F.2d 1379, 1381 (11th Cir.1993) and Excelsior Ins. Co. v. Pomona Park Bar & Package Store, 369 So. 2d 938, 941 (Fla. 1979).

Florida courts start with "the plain language of the policy, as bargained for by the parties." See Auto-Owners Ins. Co. v. Anderson, 756 So. 2d 29, 34 (Fla. 2000). If that language is unambiguous, it governs. If the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage, the insurance policy is considered "ambiguous," and must be "interpreted liberally in favor of the insured and strictly against the drafter who prepared the policy." Id.

Under Florida law, the general rule is that an insurance company's duty to defend an insured is determined solely from the allegations in the complaint against the insured, not by the true facts of the cause of action against the insured, the insured's version of the facts or the insured's defenses. Amerisure Ins. Co. v. Gold Coast Marine Distributors, Inc., 771 So. 2d 579, 580-81 (4th Fla. Dist. Ct. App. 2000). If the allegations in the complaint state facts that bring the injury within the policy's coverage, the insurer must defend regardless of the merits of

the lawsuit.  Id.  Furthermore, any doubt about the duty to defend must be resolved in favor of the insured.  Id. at 581-82.  Coverage is determined from examining the most recent amended pleading, not the original pleading.  Cf. id. at 582. Conclusory "buzz words" unsupported by factual allegations are not sufficient to trigger coverage.  Id.

In 1998, one district court observed that "[a]n insurance company's duty to defend intellectual property claims under the rubric of 'advertising injury' is the subject of countless lawsuits – indeed, a recent litigation explosion – throughout the country." Winklevoss Consultants, Inc. v. Federal Ins. Co., 991 F. Supp. 1024, 1026 (N.D. Ill. 1998).  The following year, the Third Circuit commented that "[t]he applicability of [advertising injury coverage] to a variety of torts has been the subject of numerous cases in federal courts. With varying degrees of success, insured parties have sought coverage for the underlying actions of patent infringement, trademark or trade dress infringement, misappropriation of trade secrets or other confidential information." Frog, Switch & Mfg.Co. v. Travelers Ins. Co., 193 F.3d 742, 747 (3d Cir. 1999).

In the ensuing years, courts have been called on to examine the applicability of advertising injury clauses in CGL policies to an ever-expanding array of underlying factual allegations and alleged torts based on them, even as the

standard CGL policy language has undergone periodic revision by the Insurance

Services Office ("ISO").[2] Much of this jurisprudence has developed in the federal

courts sitting in diversity jurisdiction, although insurance coverage issues are

governed by state law. The opinions of federal courts sitting in diversity are

considered persuasive, rather than precedential. Cf. Zurich Ins. Co. v. Amcor

Sunclipse North America, 241 F.3d 605, 608 (7th Cir. 2001) ("Most cases

concerning advertising injury seem to arise between parties of diverse citizenship,

at least one of which prefers federal court. The resulting paucity of state decisions

had made ascertaining state law difficult."). The Florida Supreme Court has not

spoken definitively on the issue before us. In the absence of definitive guidance

from the Florida Supreme Court, we follow relevant decisions of Florida's

---

[2] Advertising injury coverage was first introduced into CGL policies in 1973 in the form of an endorsement. Matthew J. Schlesinger & Bikram Bandy, Advertising Injury Coverage: Analyzing Its Historic Evolution And Its Changing Scope, 702 PLI/Lit 83, 85 (2004 Practicing Law Institute). In 1986, ISO moved advertising injury coverage into the main policy form and made significant changes to the coverage by, among other things, introducing the four enumerated offenses defining "advertising injury" set forth in the policy at issue on this appeal. Id. at 86-87. See also Lebas Fashion Imports v. ITT Hartford Ins. Group, 50 Cal. App. 4th 548, 588, 59 Cal. Rptr. 2d 36, 41 (1996)(discussing ISO policy changes introduced in 1986, including "misappropriation of advertising ideas or style of doing business" clause), as mod. on den. of reh'g (Nov. 27, 1996), rev. den. (Nov. 22, 1997). In 1998, ISO changed the much-litigated "misappropriation of advertising ideas or style of doing business" clause to "use of another's advertising idea" and changed "infringement of copyright, title or slogan" to "infringing upon another's copyright, trade dress or slogan." Schlesinger, supra, at 87-88. The 1998 revision also defined "advertisement" for the first time: "a notice that is broadcast or published in the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters." Id. In 2001, an intellectual property exclusion was added that barred coverage for "infringement of copyright, patent, trademark or trade secret." Id. at 89.

intermediate appellate courts.  Davis, 253 F.3d at 1319 n.6.  In the absence of precedents from Florida's intermediate appellate courts, however, we may consider the case law of other jurisdictions that have examined similar policy provisions.  17A James Wm. Moore, et al., Moore's Federal Practice § 124.22[3], 124-87, 124-88.  Cf. State Farm Fire & Cas. Co. v. Fullerton., 118 F.3d 374, 378 (5th Cir. 1997) (court may consult general rule on issue, and rules from other states that Texas might look to, in determining how state's highest court would rule).  Our objective is to determine the issues of state law as we believe the Florida Supreme Court would.  See CSX Transp., Inc. v. Trism Specialized Carriers, Inc., 182 F.3d 788, 790 (11th Cir. 1999); Fioretti v. Massachusetts General Life Ins. Co., 53 F.3d 1228, 1235 (11th Cir. 1995) (in "total absence of any relevant precedent, it becomes necessary to prognosticate" how state court would rule).  Given the paucity of Florida cases on point, the resolution of the advertising injury coverage issues requires substantial reliance on cases decided in other jurisdictions.

For purposes of adjudicating coverage disputes, this Court has distilled the typical CGL policy language on advertising injury into a three-part test:

(1) the suit must have alleged a cognizable advertising injury;

(2) the infringing party must have engaged in advertising activity; and

(3) there must have been some causal connection between the advertising injury and the advertising activity.

Hyman v. Nationwide Mutual Fire Ins. Co., 304 F.3d 1179, 1187 & n. 7 (11th Cir. 2002); Elan Pharm. Research Corp. v. Employers Ins., 144 F.3d 1372 (11th Cir. 1998). The insured's claim must satisfy all three prongs of the test for the court to hold that the insured has a duty to defend and/or indemnify its insured. For the reasons set forth below, we find that the Steinberg defendants' claim fails the first prong and, accordingly, State Farm has no duty to defend or to indemnify the Steinberg defendants in the Nicholson-Kenny lawsuit.

## B.

The Steinberg defendants assert that the underlying lawsuit alleges a cognizable advertising injury because it contains allegations that fit two of the enumerated offenses in the policy: "infringement of copyright, title or slogan" and "misappropriation of advertising ideas or style of doing business." We disagree.

For the first theory, the Steinberg defendants rely on the opinion of a Mississippi district court holding that misappropriation of a customer list qualified as an "infringement of copyright, title or slogan" because "the Court

11

finds that the Alabama action may be said to involve an infringement of [plaintiff's] title to the customer list," Merchants Co. v. American Motorists Ins. Co., 794 F. Supp. 611, 618 (S.D. Miss. 1992).  We find more persuasive the reasoning set forth in Winklevoss Consultants, Inc. v. Federal Ins. Co., in which an Illinois district court rejected the notion that alleged trade secret misappropriation could be covered as an "infringement of title." 991 F. Supp. at 1040.  Citing the definition of "title" in Black's:  "a mark, style, or designation; a distinctive appellation; the name by which anything is known," Black's Law Dictionary (6th ed. 1990), and Webster's: "an inscription placed over, upon, or under something to describe, distinguish, explain or entitle it . . . a descriptive name:  a distinctive appellation or designation," Webster's Third New Int'l Dictionary 2400 (1981), the court observed that the underlying complaint alleged that the insured was "stealing secret formulas and proprietary data entry questions," not "emulat[ing] a distinctive mark describing the software or a name by which the software was known to the public."  Winklevoss, 991 F. Supp. at 1040.  On that basis, the court denied coverage under the "infringement of title" clause.  See also, Zurich Ins. Co. v. Amcor Sunclipse, 241 F.3d at 608 (rejecting insured's argument that solicitation of competitor's customers was "infringement of title," stating "to

12

rule in [insured's] favor, a court would have to give both 'infringement' and 'title' unusual meanings, ripping them from the context that is the best guide to their meaning").

We now turn to the Steinberg defendants' second theory: that the Nicholson-Kenny lawsuit's allegations of misappropriation of a customer list and other confidential information triggers a duty to defend and/or indemnify under the "misappropriation of advertising ideas or style of doing business" clause of the policy's definition of "advertising injury." Although this clause disappeared from standard-form CGL policies in 1998, see n. 3 above, the courts have adjudicated numerous lawsuits contending that allegations of trademark or trade dress infringement trigger coverage under this clause. In Hyman, this Court held that trade dress infringement may, under certain circumstances, constitute a misappropriation of either "advertising ideas," defined as "any idea or concept related to the promotion of a product to the public," or "style of doing business," defined as "the manner in which a company promotes, presents, and markets its products to the public." 304 F.3d at 1188-89, 1191. See, also, State Auto Prop. & Cas. Ins. Co. v. Travelers Indem. Co. of Am., 343 F.3d 249 (4th Cir. 2003) (infringing use of Nissan's trademark on competing website held "misappropriation" of an

13

"advertising idea"); Sport Supply Group, Inc. v. Columbia Cas. Co., 335 F.3d 453, 464 (5th Cir. 2003) (applying Texas law, infringed trademark held to be a "label that serves primarily to identify and distinguish products," not an "advertising idea"); EKCO Group, Inc. v. Travelers Indem. Co. of Ill., 273 F.3d 409, 413-15 (1st Cir. 2001) (alleged copying of distinctive teapot design not covered because physical teapot style held not an "advertising idea"); Advance Watch Co., Ltd. v. Kemper Nat'l Ins. Co., 99 F.3d 795, 803 (6th Cir. 1996) (allegations of trademark and trade dress infringement not covered because "[r]ecognition of trademark and trade dress infringement as a distinct category of actionable conduct is so common" that if the insurer had intended to provide coverage for such liabilities, it would have written the policy to state this explicitly, as it did in the case of "infringement of copyright, title or slogan"); Adolfo House Distrib. Corp. v. Travelers Prop. & Cas. Ins. Co., 165 F. Supp. 2d 1332 (S.D. Fla. 2001) (alleged trademark infringement in advertising and distribution of hair care products held covered under clause).

The instant appeal, however, does not concern trademark or trade dress infringement but rather the misappropriation of trade secrets – specifically, confidential business information. Among federal appellate courts, only the Ninth Circuit has specifically addressed the applicability of the

14

"misappropriation of advertising ideas or style of doing business" clause in a CGL policy's advertising injury coverage for a lawsuit alleging misappropriation of a customer list and other confidential information. In Sentex Systems, Inc. v. Hartford Accident & Indemnity Co., 93 F.3d 578 (9th Cir. 1996), that court affirmed a district court's holding that the insurer had a duty to defend its insured under the "misappropriation of advertising ideas or style of doing business" clause where the underlying complaint alleged that the insured had induced a third party to breach a non-competition agreement with the underlying plaintiff company, to misappropriate its "trade secrets, including customer lists, marketing techniques, and other inside and confidential information" and, together with the insured, to solicit the underlying plaintiff's customers. Id. at 579-80.

While the Sentex court held that "misappropriation of advertising ideas" was broad enough to reach the allegations of the complaint in the underlying action at issue before it, the court expressly stated that it did not consider misappropriation of a customer list a covered offense alone. "We do not necessarily agree with the district court's broader conclusion, however, that allegations of misappropriation of customer lists . . . can alone trigger coverage " Id. at 581. Cf. Frog, Switch & Mfg. Co., 193 F.3d at 748,

15

(commenting that the "Ninth Circuit affirmed only after expressing its unease with the breadth of the district court's holding"); Hyman, 304 F.3d at 1188, n.8, (noting Ninth Circuit's "reservations about the 'district court's broader conclusion'"). The same year it decided Sentex, moreover, the Ninth Circuit rejected a coverage claim under the "misappropriation of style of doing business" clause for a suit alleging theft of trade secrets that did not arise in the course of advertising activities. Simply Fresh Fruit, Inc. v. Continental Ins. Co., 94 F.3d 1219 (9th Cir 1996).

In Frog, Switch & Mfg. Co., 193 F.3d 742, the Third Circuit held in favor of the insurer where the underlying plaintiff, a competitor of the insured, brought a lawsuit alleging that the insured had misappropriated its trade secrets and "confidential business information" by obtaining them from a former employee and by developing and marketing a competing product using them. The underlying lawsuit alleged common law unfair competition, false advertising and "reverse passing off" in violation of the Lanham Act, 15 U.S.C. § 1125(a), which prohibits false or misleading descriptions of fact in commercial advertising and promotion. The Third Circuit considered the insured's contention that it was entitled to coverage under the "misappropriation of advertising ideas or style of doing business." Id. at 746.

16

It distinguished <u>Sentex</u>, in which the insured asserted that the underlying lawsuit alleged misappropriation of "a customer list, methods of bidding jobs, billing methods and procedures, and marketing techniques, all of which it exploited to gain new business," <u>id</u>. at 748, whereas the insured in <u>Frog</u> misappropriated "information about the manufacture of dipper buckets and then advertised the resulting product." <u>Id</u>. The <u>Frog</u> court cited with approval the insurer's argument that coverage would be available for allegations of misappropriation only if they involved "an <u>advertising</u> idea, not just a nonadvertising idea that is made the subject of advertising." <u>Id</u>. "Thus, while some causes of action for unfair competition, theft of trade secrets, or misappropriation may be covered by the standard policy, many are not." <u>Id</u>. The court affirmed the district court's no-coverage determination, concluding that "[t]he allegation that [the insured] engaged in unfair competition by misappropriating trade secrets relating to manufacture of a product line does not allege misappropriation of advertising ideas or styles of doing business as such." Id. Cf. Winklevoss Consultants, Inc. v. Federal Ins. Co., 991 F. Supp. 1024 (N.D. Ill. 1998) (finding no advertising injury coverage under "misappropriation of advertising ideas or style of doing business" clause for suit alleging misappropriation and subsequent exposure of trade secrets and

17

promotion of a competing software product, applying Sentex and Simply Fresh Fruit).

In the instant appeal, the alleged misappropriation of a confidential customer list cannot, under accepted principles of insurance contract construction, be held to fall within the policy language regarding misappropriation of either "advertising ideas" or "style of doing business." A confidential customer list is a trade secret, not an idea about advertising or an outward expression of a business's style. Without relevant, attendant allegations pertaining to advertising, no coverage under a "misappropriation of advertising ideas or style of doing business" theory is available to the Steinberg defendants.

Having found that the Steinberg defendants fail the first prong of the three-part test set forth in Hyman, we need not reach the second and third prongs. Nor need we review the district court's determination that coverage is also barred by the operation of the "wilful violation of a penal statute" exclusionary clause.

## III. CONCLUSION

State Farm's CGL policy was not intended to offer "advertising injury" coverage for litigation arising from the conduct alleged against the Steinberg

18

defendants.  The allegations of the underlying lawsuit constitute neither "infringement of copyright, title, or slogan" nor "misappropriation of advertising ideas or style of doing business."  Judgment in favor of State Farm is AFFIRMED.