[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-10824

_____

D.C. Docket No. 1:12-cv-22516-JAL

FLORIDA TUBE CORPORATION,
CORUS HARDWARE CORPORATION,

Plaintiffs - Appellants,

versus

METLIFE INSURANCE COMPANY OF CONNECTICUT,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(March 17, 2015)

Before MARTIN and FAY, Circuit Judges, and GOLDBERG,[*] Judge.

MARTIN, Circuit Judge:

This case asks us to apply basic principles of contract interpretation to decide whether MetLife Insurance Company was obligated to pay the life insurance policy benefit following the reported death of its insured, Antonio Armando Fernandez.  In order to pay on account of the death of the insured, the policy requires that (1) he die during the policy period; and (2) MetLife be given "Due Proof of Death," as defined by the policy.  Appellants Florida Tube Corporation and Corus Hardware Corporation—the insurance policy beneficiaries—allege that Mr. Fernandez died in a solo-piloted airplane accident at sea.  MetLife denied the claim for coverage because it did not receive sufficient proof of Mr. Fernandez's death.  The beneficiaries sued, claiming that they are entitled to be paid under the policy because the circumstantial evidence of Mr. Fernandez's death satisfied the policy's requirements.  The District Court granted summary judgment in favor of MetLife.   After thorough review, and having had the benefit of oral argument, we conclude that the beneficiaries did not satisfy the policy's terms, and we affirm.

---

[*] Honorable Richard W. Goldberg, United States Court of International Trade Judge, sitting by designation.

## I.    FACTS AND PROCEDURAL HISTORY

The life insurance policy at the core of this dispute was issued by a predecessor company to MetLife on October 16, 1996, naming Mr. Fernandez as the insured and Florida Tube as the beneficiary.  In 2003, the beneficiary was changed to Corus.  Mr. Fernandez was the president of both beneficiary companies.  The companies filed for bankruptcy in the 2000s, and are no longer in business.  Mr. Fernandez and his wife also filed for bankruptcy in 2004.

The beneficiaries allege that on August 18, 2008, Mr. Fernandez took off in his airplane from Las Americas International Airport in the Dominican Republic going to his family's home in Puerto Rico.  Ricardo Garcia, Mr. Fernandez's assistant, dropped Mr. Fernandez off at the airport.  Mr. Garcia heard Mr. Fernandez mention concerns about electrical or battery problems on his plane, and saw him board the plane alone.  Mr. Fernandez never completed the 37-minute flight, and the wreckage from his plane has never been found.  A representative of the beneficiaries notified MetLife of Mr. Fernandez's death in August 2008.  MetLife replied on August 29, 2008, providing a claim form to be completed and requesting a copy of Mr. Fernandez's death certificate.

Mr. Fernandez's son, Armando, got a death certificate from the Dominican Republic's Central Electoral Board (CEB).  This January 23, 2009 CEB-issued death certificate wrongly listed August 13, 2008 as the date of Mr. Fernandez's

3

death, which was five days before he took the alleged ill-fated flight.  On March 8, 2009, Armando signed a Death Claim Form on behalf of Corus, also incorrectly listing August 13, 2008 as the date of Mr. Fernandez's death.  On June 23, 2009, the CEB issued a second death certificate, this time with the correct August 18, 2008 date of death.  Due to concerns about the authenticity of the second death certificate, the CEB formed a commission to investigate and report on its accuracy. On September 22, 2009, that commission instructed government agencies to refrain from using the certificate pending legal action to nullify the death certificate, noting that it was "full of irregularities."  The certificate was declared null and void on February 17, 2011.

MetLife conducted its own investigation into Mr. Fernandez's death. During the course of its investigation, MetLife learned that the death benefit proceeds were "an indispensable part" of the proposed plan of reorganization in the Fernandez family's personal bankruptcy.  MetLife was not able to find any evidence about Mr. Fernandez's location or status.  MetLife informed Corus on January 13, 2010 that MetLife had not yet received Due Proof of Death that met the requirements of the policy.  The beneficiaries' attorney mailed a copy of a National Transportation Safety Board (NTSB) report to MetLife on November 8, 2011, denominating it as sufficient proof of death.  The NTSB report describes the alleged accident in uncertain terms and does not name Mr. Fernandez, stating only

4

that the airplane "presumably collided with coastal water" and "[t]he pilot . . . [is] presumed decesased [sic]; the airplane is presumed destroyed." The NTSB report also "contain[ed] only information released by, or obtained from the [Dirección General de Aeronáutica Civil] of the Dominican Republic." MetLife rejected the NTSB report as insufficient proof of Mr. Fernandez's death, and also stated that the policy had lapsed for non-payment of the premium. The beneficiaries filed suit, and the District Court granted summary judgment for MetLife.

## II.    DISCUSSION

We review de novo the District Court's grant of summary judgment. State Farm Fire & Cas. Co. v. Steinberg, 393 F.3d 1226, 1230 (11th Cir. 2004). We also review de novo the District Court's determination about the extent of coverage under an insurance policy. Fireman's Fund Ins. Co. v. Tropical Shipping & Constr. Co., 254 F.3d 987, 1003 (11th Cir. 2001).

To decide whether the District Court's Order was correct, we must first look to the policy terms. The policy explains that the "Due Proof of Death" requirement is satisfied by providing: "[A] copy of a certified death certificate; a copy of a certified decree of a court of a competent jurisdiction as to the finding of death; a written statement by a medical doctor who attended the deceased; or any other proof satisfactory to us." (Emphasis added). The beneficiaries can offer no evidence that qualifies under the first three categories. Mr. Fernandez's

5

Dominican death certificate was deemed null and void.  No court certified a decree about his death.  And his body was never found, so no medical doctor could have attended to him.  On this record, we are left to construe the "proof satisfactory to us" provision, which is the subject of this appeal.

The policy's "proof satisfactory to us" term is unambiguous.  Under Florida law,[1] a term is ambiguous "[i]f the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and . . . another limiting coverage."  Auto–Owners Ins. Co. v. Anderson, 756 So. 2d 29, 34 (Fla. 2000).  Yet, "[a] provision is not ambiguous simply because it is complex or requires analysis."  Garcia v. Fed. Ins. Co., 969 So. 2d 288, 291 (Fla. 2007).  We conclude that this policy in this context has only one reasonable interpretation and is not ambiguous.  We must therefore apply the plain meaning of an unambiguous contract term.  See Siegle v. Progressive Consumers Ins. Co., 819 So. 2d 732, 739 (Fla. 2002).  The most literal and plain meaning of the "proof satisfactory to us" policy language is "proof satisfactory to MetLife."  Applying that meaning, MetLife was within its discretion to deny coverage when the beneficiaries gave it circumstantial proof of death that it deemed unsatisfactory.[2]

---

[1] Because the Southern District of Florida was sitting in diversity, it applied Florida law.

[2] It may be true (as suggested by the District Court) that there is some implied reasonableness threshold for denying "proof satisfactory to us" when presented with evidence that would be almost universally satisfactory.  This case does not reach that threshold.

This interpretation is supported by our precedent.  In <u>Tippitt v. Reliance Standard Life Insurance Company</u>, 457 F.3d 1227 (11th Cir. 2006), we held that the phrase "satisfactory . . . to us" vests the plan administrator of an employee benefit plan with the discretion to determine whether the provided evidence was sufficient.  <u>Id.</u> at 1233–34.  The beneficiaries argue that <u>Tippitt</u> is distinguishable because, unlike the present dispute, <u>Tippitt</u> interpreted ERISA policies.[3]  This distinction matters, they say, because provisions in ERISA plans are subject to a deferential, subjective standard of review, while non-ERISA plans should be reviewed under a non-deferential, objective standard of review.  On this logic, the beneficiaries ask us to inquire into what a reasonable person would find to be sufficient proof, instead of MetLife's subjective view.

Our precedent does not recognize the distinction suggested by the beneficiaries.  First, <u>Tippitt</u> was decided, in part, on state law contract interpretation principles, which would remain the same whether or not the plan was covered under ERISA.  <u>See</u> 457 F.3d at 1234–35 (applying state law principles of insurance contract interpretation).  In <u>Tippitt</u>, we were asked to decide whether a heightened arbitrary and capricious standard should apply to an ERISA plan administrator's decision to deny benefits.  <u>Id.</u> at 1233.  As part of our analysis to conclude that the District Court appropriately used the heightened standard, we

---

[3] ERISA policies are those involving certain employee benefit plans which are protected by the Employee Retirement Income Security Act of 1974.

held that nearly-identical Tippitt policy language vested discretionary authority in the administrator. Id. at 1234. Nothing in our holding confined our interpretation of the policy language to ERISA cases. Second, the beneficiaries point to no case that explains why we must interpret policy language in non-ERISA plans differently. Finally, the incentive for proof provisions in insurance policies is the same whether or not ERISA is involved. It is to make sure that an insurance company has the facts it needs "to afford the insurer an adequate opportunity to investigate, prevent fraud, and form an intelligent estimate of its rights and liabilities before it is obliged to pay." Allstate Floridian Ins. Co. v. Farmer, 104 So. 3d 1242, 1246 (Fla. 5th DCA 2012). The beneficiaries have not shown that an objective standard of review should apply here.

Finally, even if we were to apply the beneficiaries' desired objective standard, MetLife would have an objective reason to deny coverage here. The death certificate originally issued by Dominican authorities was revoked due to inconsistencies and questionable accuracy. Similarly, the NTSB report lacks critical detail that connects the crash information to Mr. Fernandez, and it was based on the same information from Dominican authorities which resulted in nullification of the death certificate. Nobody saw Mr. Fernandez actually fly the plane away; no body or wreckage was found; and the initial death certificate and paperwork filed by Mr. Fernandez's son listed the wrong date of death. Also

8

relevant, the insurance proceeds were an important part of resolving the Fernandez family's personal bankruptcy, and this gave MetLife reason to be concerned about potential fraud. The other forms of proof listed in the Due Proof of Death section are highly reliable and official documents. It is reasonable to conclude that "proof satisfactory to us" must be similarly reliable. MetLife was objectively reasonable to decline the beneficiaries' circumstantial evidence.[4]

## III.  CONCLUSION

The beneficiaries in this case entered into an insurance contract that requires very specific forms of proof, which they were not able to provide. By the plain meaning of the policy's terms, MetLife retained discretion to decide whether the beneficiaries provided sufficient proof of death. Absent procedural or substantive unconscionability, we generally do not intervene when parties agree to terms in arms-length transactions.

**AFFIRMED.**

---

[4] Because we conclude that the beneficiaries did not satisfy the Due Proof of Death requirement, we do not reach the question of whether they established that Mr. Fernandez died during the policy period.