# Third District Court of Appeal

## State of Florida

Opinion filed February 12, 2025.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D23-1088
Lower Tribunal No. 21-3580
_____

**Jose Fernandez, et al.**,
Appellants,

vs.

**Old Republic National Title Insurance Company, etc.**,
Appellee.


An Appeal from the Circuit Court for Miami-Dade County, Reemberto Diaz, Judge.

Lizette P. Benitez, for appellants.

Krinzman Huss Lubetsky Feldman & Hotte, and Cary A. Lubetsky and Lynette Ebeoglu McGuinness, for appellee.


Before EMAS, SCALES, and BOKOR, JJ.

ON MOTION FOR REHEARING

SCALES, J.

We deny Old Republic National Title Insurance Company's ("Old Republic") motion for rehearing and certification, but withdraw our previous opinion, and substitute the following opinion in its stead.

In this first-party insurance case based on a title insurance policy, appellants Jose Fernandez and Olga Palma (together "Insureds"), the plaintiffs below, appeal a June 13, 2023 final summary judgment in favor of the defendant below, appellee Old Republic. In the challenged judgment, the trial court determined that none of the three claims alleged in a lawsuit against Insureds were covered under the subject title policy and, therefore, Old Republic had no duty to defend Insureds in that lawsuit. We affirm that portion of the judgment determining that the tortious interference and conspiracy claims asserted against Insureds were not covered by the title policy but reverse that portion of the judgment regarding the rescission claim because the underlying allegations in the lawsuit were insufficient to conclusively demonstrate that a policy exclusion relied upon by Old Republic applied to the rescission claim.

## I.     RELEVANT FACTS AND PROCEDURAL HISTORY

A. *The Underlying Real Estate Transaction and the Monroe County Lawsuit*

2

On August 19, 2019, Benton William Langley ("Langley") executed a contract (the "Langley contract") to purchase a twenty-acre parcel of real property located in Summerland Key, Florida for $1.2 million, with a closing date of October 3, 2019. In September 2019, Insureds executed a backup contract to purchase the property for $1.25 million. The Langley contract did not proceed to the October 3rd closing and, on October 4, 2019, Insureds closed on the purchase of the Summerland Key property pursuant to their backup contract. As part of their closing on the property, Insureds procured a title insurance policy from Old Republic that, subject to exclusions and exceptions, insured good and marketable title for the property.

On October 21, 2019, Langley filed in the Monroe County circuit court a verified lawsuit (the "Monroe County lawsuit") against Insureds, the seller's representative,[1] and the seller's real estate agent and agency. The gravamen of Langley's Monroe County lawsuit was that Langley had a valid agreement to purchase the property from the seller, and that when Langley rebuffed Insureds' offer to purchase the Langley contract for $200,000, Insureds then conspired with the seller's representative and real estate agent to have the property sold to Insureds instead.

---

[1] The property was owned by a trust. The seller's representative was the trustee of the trust.

3

The Monroe County lawsuit alleged claims against Insureds seeking damages for tortious interference with the Langley contract and civil conspiracy to commit fraud. The pleading also alleged a claim to rescind Insureds' deed, and to impose an equitable lien on the property in favor of Langley.

All of the claims incorporated the verified pleading's general allegations that (i) the seller's agent informed Langley that "other people were interested in the property and they would buy Langley's contract for 'a couple hundred thou' if he was interested," (ii) when Langley denied interest in selling the Langley contract to the undisclosed "other people," the seller's representative and real estate agent then "secretly" executed the backup contract with Insureds and "surreptitiously" dealt with Insureds "behind Langley's back in a scheme to cheat Langley out of his contract for the parcel," (iii) Insureds "conspired" with the seller's representative and real estate agent "to sabotage Langley's contract for their own purposes so that [Insureds] could acquire the property, and [the seller] and [real estate agent] could receive more money than they otherwise would under the Langley contract,'" (iv) the seller "refused to perform under the Langley contract" despite Langley having "executed all of the required closing documents and wired the required proceeds to complete the transaction," and (v) after

4

September 29, 2019, the real estate agent "stopped all contact with Langley about the [Langley contract], thereby abandoning Langley as a buyer."

The rescission claim alleged further, in relevant part, the following:

> 51. At all times relevant to this action, [Insureds] knew of the contract for the property between the [seller] and Langley, and at one point, through [the seller's real estate agent], offered to buy Langley's contract for several hundred thousand dollars.
>
> 52. When Langley refused to sell his contract, [Insureds] fraudulently agreed with [the seller's representative] to enter into a contract with [the seller], and by doing so, they effectively sabotaged the Langley contract, all of which was unknown to Langley at the time.
>
> 53. The fraud committed by [the seller's representative] and Insureds is a sufficient basis in law or equity for the court to set aside all transactions founded on the fraud. . . .

In connection with the Monroe County lawsuit, on October 28, 2019, Langley recorded a notice of lis pendens against the property in the public records.

*B. The Title Insurance Policy and Old Republic's Refusal to Defend the Monroe County Lawsuit*

The title insurance policy procured by Insureds from Old Republic provides coverage for a litany of "covered risks" including, but not limited to, any defect in, or encumbrance on, the title. In addition to providing indemnification to Insureds for covered losses, the title policy also imposes

5

upon Old Republic a duty to defend Insureds in litigation over a claim covered by the policy:

**5. DEFENSE AND PROSECUTION OF ACTIONS**

(a) Upon written request by the Insured, . . . the Company, at its own cost and without unreasonable delay, shall provide for the defense of an Insured in litigation in which any third party asserts a claim covered by this policy adverse to the Insured. This obligation is limited to only those stated causes of action alleging matters insured against by this policy. . . . The Company will not pay any fees, costs, or expenses incurred by the Insured in the defense of those causes of action that allege matters not insured against by this policy.

When Insureds submitted their written request that Old Republic provide Insureds a defense in the Monroe County lawsuit, Old Republic notified Insureds that it would not provide Insureds with a defense, and that it was denying coverage for the tortious interference and conspiracy claims because those claims were not covered under the policy. Old Republic also denied coverage for the rescission claim asserting that this claim was subject to policy exclusion (3)(a), which reads as follows:

The following matters are expressly excluded from the coverage of this policy, and [Old Republic] will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of . . . (3) Defects, liens, encumbrances, adverse claims, or other matters . . . (a) created, suffered, assumed, or agreed to by the Insured Claimant[.]

According to Old Republic, exclusion (3)(a) applied because the Monroe County lawsuit alleged that Insureds "acted in concert with the seller

6

to interfere with [Langley's] claimed superior contract rights." Insureds then hired their own counsel who successfully defended Insureds in the Monroe County lawsuit, resulting in Langley withdrawing the lis pendens recorded against the property and dismissing Insureds from the Monroe County lawsuit.

### C. Insureds' Breach of Contract Action Against Old Republic and Final Summary Judgment for Old Republic

On February 12, 2021, Insureds filed the instant first-party action against Old Republic in the Miami-Dade County circuit court. Insureds' operative amended complaint alleged that Old Republic breached the parties' title insurance policy by failing to defend Insureds in the Monroe County lawsuit. Insureds sought to recover as damages those attorney's fees and costs that Insureds incurred in the defending the Monroe County lawsuit.[2]

Old Republic's responsive pleading denied Insureds' allegations, raising affirmative defenses that Old Republic had no duty to defend the Monroe County lawsuit because the underlying pleading's allegations

---

[2] See MCO Envt'l, Inc. v. Agricultural Excess & Surplus Ins. Co., 689 So. 2d 1114, 1116 (Fla. 3d DCA 1997) ("If an insurance company breaches its contractual duty to defend, the insured can take control of the case, settle it, and then sue the insurance company for the damages it incurred in settling the action.").

purportedly showed either that the claims were not "covered risks" under the subject policy or that policy exclusion (3)(a) applied.

The parties filed cross-motions for summary judgment on whether Old Republic had a duty to provide Insureds a defense in the Monroe County lawsuit, supporting their respective motions with affidavits and accompanying exhibits. After holding a hearing on the parties' summary judgment motions, the trial court entered the challenged, final summary judgment in favor of Old Republic. Therein, the trial court held that Old Republic had no duty to defend Insureds in the Monroe County lawsuit because (i) the tortious interference and conspiracy claims against Insureds were not "covered risks" under the policy, and (2) the rescission claim against Insureds alleged facts that fell under policy exclusion (3)(a). Insureds timely appealed the final summary judgment.

II. **ANALYSIS**[3]

> *A. General rule: The Complaint's Allegations Determine Whether an Insurer Must Provide a Defense*

---

[3] We review de novo an order granting summary judgment. See Valdivieso v. Citizens Prop. Ins. Corp., 388 So. 3d 1004, 1007 n.6 (Fla. 3d DCA 2024). "Similarly, the interpretation of an insurance contract presents a pure legal issue subject to de novo review." Id. (quoting Pride Clean Restoration Inc. v. Certain Underwriters at Lloyd's of London, 331 So. 3d 841, 843 (Fla. 3d DCA 2021)).

An insurer's duty to provide a defense for its insured is generally determined by the allegations against the insured contained in the operative complaint. See Sierra Auto Ctr., Inc. v. Granada Ins. Co., 317 So. 3d 1220, 1222 (Fla. 3d DCA 2021). Any doubt about whether an insurer should provide a defense to the insured should be determined in favor of the insurer providing the defense. See Khatib v. Old Dominion Ins. Co., 153 So. 3d 943, 947 (Fla. 1st DCA 2014). This is particularly true with respect to a policy exclusion. See Advanced Sys., Inc. v. Gotham Ins. Co., 272 So. 3d 523, 527 (Fla. 3d DCA 2019) ("[B]ecause [the insurer] relies on an exclusion to deny coverage, 'it has the burden of demonstrating that the allegations of the complaint are cast solely and entirely within the policy exclusion and are subject to no other reasonable interpretation.'" (quoting Castillo v. State Farm Fla. Ins. Co., 971 So. 2d 820, 824 (Fla. 3d DCA 2007), disagreed with on other grounds, Washington Nat'l Ins. Corp. v. Ruderman, 117 So. 3d 943 (Fla. 2013))); Herrera v. C.A. Seguros Catatumbo, 844 So. 2d 664, 668 (Fla. 3d DCA 2003) (noting that "the insurer bears the burden of proving applicability of a claimed policy exclusion").

      *B. Application of the General Rule to the Allegations in the Monroe County Lawsuit*

    1.  The tortious interference and conspiracy claims

We agree with the trial court that the Monroe County lawsuit's claims that Insureds conspired to commit fraud and tortiously interfered with the Langley contract were not "covered risks" under the title insurance policy. "A title insurance policy contemplates a search of the chain of title, an opinion by an expert of what the search reveals and a guaranty that the search was accurate and that it expresses the quality of the title shown by the record." Krause v. Title & Tr. Co. of Fla., 390 So. 2d 805, 806 (Fla. 5th DCA 1980). "[T]itle insurance is not casualty insurance." Lawyers Title Ins. Corp. v. D.S.C. of Newark Enters., 544 So. 2d 1070, 1072 (Fla. 4th DCA 1989).

The Monroe County lawsuit's allegations regarding the tort and conspiracy claims do not provide a basis for coverage under the policy. The instant policy simply does not provide coverage for claims that seek damages for alleged torts not directly involving the title to Insureds' property. Thus, we affirm that portion of the challenged judgment concluding those claims were not covered by the policy.

2. The rescission claim

Langley's rescission claim sought, *inter alia*, an order from the court restoring the parties to their position as if the backup contract between the seller and Insureds never took place, i.e., an order canceling the deed from the seller to Insureds. This rescission claim, unlike the tort and conspiracy

claims, directly challenged the validity and marketability of Insureds' title to the property, especially because the filing of the lis pendens was presumably premised upon this rescission claim. Unless an exception or exclusion applied, it was, therefore, likely a covered claim under the policy and Old Republic owed Insureds a duty to defend.

Old Republic argues, as it did below, that it was not obligated to provide Insureds a defense to the rescission claim asserted in the Monroe County lawsuit because the policy's exclusion (3)(a) applied to this claim. Specifically, Old Republic asserts that the gravamen of the overall allegations against Insureds conclusively established that Langley's "adverse claim" against Insureds was "suffered" or "created" by Insureds.[4] We disagree because a careful reading of the Monroe County lawsuit's allegations directs a finding that the exclusion did not apply.

---

[4] In First American Title Insurance Company v. Kessler, 452 So. 2d 35 (Fla. 3d DCA 1984), this Court adopted the following definitions for "created" or "suffered" as they are used in a sufficiently similar exclusion from coverage in a title insurance policy. "'Create' as used in a title insurance policy 'refers to a conscious, deliberate causation or an affirmative act which actually results in the adverse claim or defect.'" Id. at 39, n.5 (quoting Laabs v. Chicago Title Ins. Co., 241 N.W. 2d 434, 439 (Wis. 1976)). "The term 'suffers' as used in a title policy 'implies the power to prohibit or prevent the [defect] which has not been exercised although the insured has full knowledge of what is to be done with the intention that it be done.'" Id. (quoting Ariz. Title Ins. & Tr. Co. v. Smith, 519 P. 2d 860, 863 (Ariz. Ct. App. 1974)).

11

We find instructive the analysis employed by the Fourth District in Amerisure Insurance Co. v. Gold Coast Marine Distributors, Inc., 771 So. 2d 579 (Fla. 4th DCA 2000), despite that court ultimately concluding the insurer had no duty to provide a defense for its insured. In Amerisure, the insurer provided coverage to the insured for "advertising injury," a term defined in the policy as an injury arising from defamation. Id. at 581. While the initial and amended complaints against the insured made passing references to "defamation" and "damage to business reputation," there were no facts alleged creating any potential liability to the insured for defamation. Id. at 581-82.

In reversing the trial court's determination that the insurer owed a duty to defend, the Amerisure court carefully reviewed the initial and amended complaints and determined that neither pleading contained allegations of underlying facts supporting a cause of action for defamation for which there would have been coverage under the policy. Id. Importantly, in reaching its determination, the Amerisure court held that the plaintiffs' mere inclusion in their complaints of the conclusory buzz words "defamation" and "damage to [business] reputation" were insufficient create a duty to defend. Id. at 582.

We employ the same analysis used by the Amerisure court here in our determination of whether an alleged policy exclusion applies to an otherwise

12

covered claim. At its core, the Monroe County lawsuit alleged nothing more than that Insureds, after Langley refused their offer to buy the Langley contract, entered into, and ultimately closed on, a backup contract with the seller on terms more favorable to the seller. While the Monroe County lawsuit's rescission claim was purportedly grounded on fraud allegations, those allegations were supported by mere buzz words rather than specific factual allegations. See Fla. R. Civ. P. 1.120(b) ("In all averments of fraud . . . , the circumstances constituting fraud . . . shall be stated with such particularity as the circumstances may permit.").

Langley's pleading merely contained generalized allegations of Insureds' "secret[]," "surreptitious[]," "conspiring," "fraudulent[]," and "sabotaging" conduct that were not only conclusory in nature but lacked any description of specific conduct by Insureds that could be considered fraudulent. The pleading contained no allegations of any specific wrongful conduct of Insureds that, in any way, prevented Langley from closing on the Langley contract. In our view, for exclusion 3(a) to have applied to relieve Old Republic of its duty to defend, the Monroe County lawsuit must have included sufficient, specific factual allegations that Insureds engaged in objectively wrongful conduct that caused the adverse claim.

13

Bearing in mind that any doubts as to whether there is a duty to defend must be resolved against the insurer, because the Monroe County lawsuit failed to contain sufficient allegations to trigger the subject policy's exclusion 3(a), we conclude that Old Republic had a duty to defend Insureds against the rescission claim.

Accordingly, we affirm that portion of the June 13, 2023 final summary judgment relating to the conspiracy and tortious interference claims. We reverse that portion of the judgment relating to the rescission claim, and remand for further proceedings not inconsistent with this opinion.[5]

Affirmed in part, reversed in part and remanded.

---

[5] Because, in the challenged judgment, the trial court concluded that the Monroe County lawsuit failed to allege *any* covered claims against Insureds under the parties' title insurance policy, the trial court did not reach, much less decide, the apparently novel question in Florida as to whether Old Republic, a title insurer, owed Insureds a duty to defend Insureds against *all* of the claims alleged in the Monroe County lawsuit where only one of the claims is covered by the title policy. See MCO Envt'l, Inc. v. Agricultural Excess & Surplus Ins. Co., 689 So. 2d 1114, 1116 (Fla. 3d DCA 1997) (recognizing, in a case not involving a title insurance policy, that a liability insurer is generally obligated to defend the entire suit brought against an insured where the underlying complaint "alleges facts that could bring the insured partially within coverage of the policy"). We, therefore, do not, in the first instance, address or express any opinion on, whether Old Republic's duty to defend extended beyond the rescission claim to the other non-covered claims alleged against Insureds in the Monroe County lawsuit.